11-4366-cv
McElwee v. County of Orange

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2012

(Argued: October 4, 2012      Decided: November 15, 2012)

Docket No. 11-4366-cv

_____

JAMES C. MCELWEE,

                              *Plaintiff-Appellant,*

                v.

COUNTY OF ORANGE,

                              *Defendant-Appellee.*

_____

Before:
        RAGGI, CHIN, and CARNEY, *Circuit Judges.*

        Appeal from a judgment of the United States

District Court for the Southern District of New York

(Duffy, *J.*), entered on September 30, 2011, dismissing

plaintiff's claims under Title II of the Americans with

Disabilities Act, 42 U.S.C. § 12131 *et seq.*, and Section

504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et*

*seq.*, following the district court's grant of defendant's motion for summary judgment.

AFFIRMED.

STEPHEN BERGSTEIN, Bergstein & Ullrich, LLP, Chester, New York, *for Plaintiff-Appellant*.

KAREN FOLSTER LESPERANCE (David L. Posner, *on the brief*), McCabe & Mack LLP, Poughkeepsie, New York, *for Defendant-Appellee*.

Brian D. East, Disability Rights Texas, Austin, Texas, *for Amici Curiae National Disability Rights Network and Autism Speaks*.

CHIN, *Circuit Judge*:

Plaintiff James C. McElwee appeals from a judgment of the United States District Court for the Southern District of New York (Duffy, *J.*). McElwee served as a volunteer at Valley View Center for Nursing Care and Rehabilitation ("Valley View"), a federally funded entity operated by defendant Orange County (the "County"). In 2009, McElwee was dismissed from Valley View's volunteer program after engaging in erratic and harassing behavior toward female staff members. McElwee, who was previously diagnosed with Pervasive Developmental Disorder, brought

-2-

this action against the County pursuant to Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 794 *et seq.*, alleging that he was denied a reasonable accommodation for his disability.

The district court found that McElwee was not disabled within the meaning of the statutes and granted the County's motion for summary judgment dismissing the Complaint.  We affirm the district court's award of summary judgment, albeit on different grounds.

## *BACKGROUND*

The following facts are undisputed, unless otherwise noted.

## A.    *The Plaintiff*

McElwee is a man in his mid-thirties with a neurodevelopmental disorder formally classified as Pervasive Developmental Disorder - Not Otherwise Specified ("PDD-NOS") and informally called an autism spectrum disorder.  He has an IQ of 79, placing him in the eighth percentile of intellectual functioning.  He lives with his

mother, has never held a job, and likely will always require assistance in managing money and completing non-routine tasks.

In 1996, McElwee began participating in a volunteer program at Valley View, where he performed janitorial and housekeeping duties and transported nursing home residents to religious and social events. McElwee competently performed these assigned tasks without hindrance from his alleged disability. Meanwhile, the volunteer program improved his self-esteem by allowing him to associate with other people in the community and provide a service to the elderly and infirm.

B. **A Staff Member Complains**

On November 20, 2009, Martha Thompson, a staff member at Valley View, informed Robin Darwin, the Assistant Administrator, that McElwee was "acting inappropriately towards her and making her feel uncomfortable." Specifically, Thompson complained that on multiple occasions, McElwee had waited for her and followed her in the hallways, staring at her rear end. Thompson also told Darwin that she was aware of at least two other women at

-4-

Valley View who McElwee had "bothered" or made to feel uncomfortable.

On November 24, 2009, Darwin and Amy Fey, the Director of Activities, met with McElwee to inform him that someone had complained about his behavior and to discuss the allegations with him. When Darwin asked McElwee if he knew who the complainant might be, McElwee replied that it might be a social worker named Lindsay because he "look[s] at her and talk[s] to her." When Darwin told McElwee that it was not Lindsay, he guessed that it might be a particular nurse's aide, admitting, "I talk to her too, and look at her." McElwee then said that God was trying to punish him because of his "history," and he explained that when he was in high school he "made a mean phone call to a girl, saying nasty/dirty things." McElwee further stated, "there needs to be punishment and now," and made a gesture simulating slitting his throat. When Darwin asked him what he meant, McElwee replied that he "deserve[d] to be punished when [he does] bad things." McElwee then made an angry face and said, "just when I think someone is going to pat me on the back someone stabs me," simultaneously making

-5-

a gesture as if he were holding a knife and repeatedly stabbing himself in the back. When Darwin informed McElwee that it was Thompson who had complained about him, he said: "Oh, I should have known. I had a feeling she was going to turn me in."

## C. *Valley View Investigates Further*

After her meeting with McElwee, Darwin spoke with Valley View's Facility Administrator, who told her to conduct a further investigation regarding McElwee's behavior if she was considering terminating his volunteer services.

On November 25, 2009, Darwin informed McElwee that she was disturbed by the situation, she was going to conduct an investigation, and he should leave Valley View and not return until he heard from her. McElwee started to cry, and said that Darwin was a conduit of God. He said that God was telling him not to do these things anymore, and was punishing him for what he had done in the past. McElwee also said that he had been conducting research at the library over the last several months to see if his

behavior could be considered domestic violence or sexual harassment.

Darwin subsequently conducted an investigation by interviewing individuals at Valley View about McElwee's behavior. In total, five women reported that McElwee had behaved inappropriately toward them, and a security guard reported that he had seen McElwee bothering nursing students and visitors.

Liz Murphy, a staff member in Valley View's payroll department, told Darwin that McElwee watched her and followed her on her breaks, and she recounted one instance when McElwee sat in the lobby and watched her while she distributed checks. Murphy told Darwin that this behavior had been going on for a few years but had increased since the previous spring. She said she gave McElwee the cold shoulder and went out of her way to avoid him. Barbara Decker, another payroll department employee, told Darwin that McElwee used to carry around a stuffed dolphin that he asked women to pet, in a manner she perceived as sexually suggestive. Decker also said that several years earlier McElwee had inquired about dating her

-7-

daughter, and that the way he spoke about her daughter made her uncomfortable. Pat Matero, the Director of Admissions, told Darwin that McElwee once asked her how he would look in a Speedo, and that she had observed him in the past "playing up" to young aides with sexual innuendo. Irene Simpson, the Activities Supervisor at Valley View, told Darwin that McElwee once said to her, "[d]o you realize what I could do to you?" in what she felt was a threatening way. Eric Gould, a security guard at Valley View, told Darwin that Thompson and Murphy had complained to him that McElwee's behavior made them feel uncomfortable. Gould also said he had observed McElwee leering at and acting inappropriately around female nursing students and visitors.

## D. *McElwee is Dismissed*

Based on her investigation, Darwin concluded that McElwee was a potential liability for Valley View in that he was sexually harassing staff, nursing students, and

visitors, and had exhibited disturbing behavior when confronted with these allegations.[1]

On November 30, 2009, McElwee's mother called Darwin and told her that McElwee "is not like everyone else" and that he should not be discriminated against because he has a disability and because he was looking at people.  She asked Darwin to call McElwee's therapist, who could better explain why he acted the way that he did. Darwin never called the therapist.

Darwin consulted with Valley View's Facility Administrator, the County Executive's Office, and the County Law Department regarding the results of her investigation.  On December 1, 2009, she sent McElwee a letter, stating that his volunteer services were no longer needed at Valley View.

On December 10, 2009, McElwee went to Valley View to sing Christmas carols for the residents.  When he

---

[1] McElwee argues that some of the identified incidents occurred many years earlier, it was not his intention to harass or make people feel uncomfortable, and his actions must be viewed in the context of his disability; he does not dispute, however, that the incidents occurred or that they were reported to Darwin as described.

-9-

arrived at the facility, a security guard told him he was not allowed inside the building because of "what had happened recently."

**E.** *Procedural History*

McElwee filed the action below on January 8, 2010, alleging that the County had violated the ADA and the Rehabilitation Act by dismissing him from the volunteer program and subsequently excluding him from Valley View altogether without providing him a reasonable accommodation for his mental impairment.

Following discovery, the County moved for summary judgment. On September 29, 2011, the district court granted the County's motion, holding that McElwee was not "'substantially limited' in the major life activity of interacting with others" and therefore was not "disabled" under the ADA or the Rehabilitation Act. *See McElwee v. Cnty. of Orange*, No. 10 Civ. 00138 (KTD), 2011 U.S. Dist. LEXIS 114663, at *20 (S.D.N.Y. Sept. 29, 2011). In particular, the court held, "while Plaintiff may suffer from a diagnosed disorder, . . . Plaintiff has not demonstrated that his mental impairment substantially

-10-

impairs his ability 'to connect with others, i.e., to initiate contact with other people and respond to them, or to go among other people -- at the most basic level of these activities.'"  *Id.* at \*16 (quoting *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 201 (2d Cir. 2004)).

The court did not consider whether McElwee was otherwise qualified to be a volunteer at Valley View or whether the accommodations he sought were reasonable. Judgment dismissing the Complaint was entered on September 30, 2011.

This appeal followed.

***DISCUSSION***

**A.   *Applicable Law***

**1.   *Standard of Review***

We review an award of summary judgment *de novo*, construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in his favor.  *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009).  Summary judgment is appropriate where the record reveals that there is "no genuine dispute as to any material fact and the movant is

-11-

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  We may affirm summary judgment on any ground supported by the record, even if it is not one on which the district court relied.  *10 Ellicott Sq. Ct. Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 125 (2d Cir. 2010).

## 2.   *The ADA and the Rehabilitation Act*

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Similarly, Section 504 of the Rehabilitation Act prohibits programs and activities receiving federal financial assistance from excluding, denying benefits to, or discriminating against "otherwise qualified" disabled individuals.  29 U.S.C. § 794(a).  Because the standards adopted by the two statutes are

nearly identical, we consider the merits of these claims together. *See Abrahams v. MTA Long Island Bus*, 644 F.3d 110, 115 n.3 (2d Cir. 2011).

To assert a claim under Title II of the ADA or section 504 of the Rehabilitation Act, a plaintiff must demonstrate that (1) he is a qualified individual with a disability; (2) the defendant is subject to one of the Acts; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131. A "disability" is defined as "a physical

-13-

or mental impairment that substantially limits one or more major life activities."  *Id.* § 12102(1)(A).

Under both statutes, a defendant discriminates when it fails to make a reasonable accommodation that would permit a qualified disabled individual "to have access to and take a meaningful part in public services."[2]  *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004); *see also* 42 U.S.C. § 12112(b)(5)(A) (the term "discriminate" under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a

---

[2]    Although McElwee brought the instant case pursuant to Title II of the ADA, we may look for guidance to case law under Title I of the ADA, which governs employment discrimination, because (i) courts use the terms "reasonable modifications" in Title II and "reasonable accommodations" in Title I interchangeably, *see, e.g.*, *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85, 88 (2d Cir. 2004) (discussing "accommodations" provided in Title II case); *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1195 n.8 (10th Cir. 2007) (noting that "Title II's use of the term 'reasonable modifications' is essentially equivalent to Title I's use of the term 'reasonable accommodation'"); and (ii) McElwee's volunteer position at Valley View was analogous to that of an employee, *see, e.g.*, *Bauer v. Muscular Dystrophy Ass'n, Inc.*, 427 F.3d 1326, 1333 (10th Cir. 2005) (noting that reference to Title I case law was appropriate in Title III case where plaintiffs, who were volunteers, "act[ed] in a capacity at least somewhat analogously to that of an employee").

-14-

disability who is an applicant or employee").  "A 'reasonable accommodation' is one that gives the otherwise qualified plaintiff with disabilities 'meaningful access' to the program or services sought."  *Henrietta D.*, 331 F.3d at 282 (quoting *Alexander v. Choate*, 469 U.S. 287, 301 (1985)).

Although a public entity must make "reasonable accommodations," it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice.  *See Fink v. N.Y.C. Dep't of Personnel*, 53 F.3d 565, 567 (2d Cir. 1995).  An accommodation is not reasonable if it would impose an undue hardship on a program's operation or "would fundamentally alter the nature of the service, program, or activity."  *Powell*, 364 F.3d at 88 (citing 28 C.F.R. §§ 41.53, 35.130(b)(7)) (internal quotation marks omitted).  Moreover, under the ADA, workplace misconduct is a legitimate and nondiscriminatory reason for terminating employment, even when such misconduct is related to a

disability.[3]  A requested accommodation that simply excuses past misconduct is unreasonable as a matter of law.[4]

Although it is generally "the responsibility of the individual with a disability to inform the employer that an accommodation is needed," *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008) (quoting *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006))

---

[3]    *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 172 (2d Cir. 2006) (the ADA does not "require that employers countenance dangerous misconduct, even if that misconduct is the result of a disability"); *see also Raytheon Co. v. Hernandez*, 540 U.S. 44, 54 n.6 (2003) (rejecting suggestion that employer's refusal to rehire someone because of his disability-related misconduct would violate the ADA); *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 465 (4th Cir. 2012) ("[M]isconduct -- even misconduct related to a disability -- is not itself a disability and may be a basis for dismissal."  (citation and internal quotation marks omitted)).

[4]    *See Canales-Jacobs v. N.Y.S. Office of Ct. Admin.*, 640 F. Supp. 2d 482, 500 (S.D.N.Y. 2009) ("The ADA does not excuse workplace misconduct because the misconduct is related to a disability."); *Fahey v. City of N.Y.*, No. 10 Civ. 4609 (ILG) (MDG), 2012 U.S. Dist. LEXIS 15104, at *31 (E.D.N.Y. Feb. 7, 2012) (rejecting plaintiff's failure to accommodate claim where requested accommodation was to receive penalty other than termination for past misconduct); *Whalley v. Reliance Grp. Holdings, Inc.*, No. 97 Civ. 4018 (VM), 2001 U.S. Dist. LEXIS 427, at *27 (S.D.N.Y. Jan. 22, 2001) (holding that plaintiff's belated request for accommodation after learning of employer's decision to terminate him amounted to a request for a second chance); U.S. Equal Emp't Opportunity Comm'n, *Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act*, question 36 (2002) ("Since reasonable accommodation is always prospective, an employer is not required to excuse past misconduct even if it is the result of the individual's disability.").

(internal quotation marks omitted), under certain circumstances, an employer is required to act proactively and engage in an interactive process to accommodate the disability of an employee even if the employee does not request accommodation, *see id.; see also* 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation.").  Nevertheless, an employee may not recover based on his employer's failure to engage in an interactive process if he cannot show that a reasonable accommodation existed at the time of his dismissal.  *See McBride*, 583 F.3d at 99-101.

A plaintiff alleging that he was denied a reasonable accommodation bears the burdens of both production and persuasion as to the existence of some accommodation that would allow him to meet the essential eligibility requirements of the service, program, or activity at issue.  *See id.* at 97.  Once the plaintiff has demonstrated that there is a "plausible accommodation, the

costs of which, facially, do not clearly exceed its benefits," the defendant bears the burden of proving that the requested accommodation is not reasonable. *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995).

**B.   *Application***

In this case, the parties agree that McElwee has satisfied the second element of his claim:  Valley View is a federally funded entity of the County, and therefore is subject to the ADA and the Rehabilitation Act.  *See* 42 U.S.C. § 12131(1)(B) (defining "public entity" as, *inter alia*, "any department, agency, special purpose district, or other instrumentality of a State or States or local government"); 29 U.S.C. § 794(a) (prohibiting discrimination by "any program or activity receiving Federal financial assistance").

The parties dispute, however, whether the first and third elements are satisfied, *i.e.*, whether McElwee is a qualified individual with a disability and whether the County discriminated against him by denying him a

reasonable accommodation.  We discuss these elements in turn.

1.    *Whether McElwee is a Qualified Individual with a Disability*

The question whether McElwee is a qualified individual with a disability has two aspects, namely, whether he is disabled and whether he is qualified.  We consider both aspects below.

a.    *Whether McElwee is Disabled*

The district court found that McElwee was not substantially limited in the major life activity of interacting with others and concluded that McElwee was not disabled.  *See McElwee*, 2011 U.S. Dist. LEXIS 114663, at *20.  On appeal, McElwee argues that the district court erred by failing to consider the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553 (2008), which amended the ADA to provide that the definition of "disability" shall be construed broadly "to the maximum extent permitted by the terms of this chapter" and "[t]he term 'substantially limits' shall be interpreted consistently with the findings and purposes of the

-19-

[ADAAA]."  42 U.S.C. § 12102(4)(A), (B).[5]  Similarly, the

*amici curiae* argue that, in light of the ADAAA, the

district court erred in concluding that McElwee is not

disabled.

Both McElwee and *amici* raise fair concerns as to

whether the district court erred in not addressing whether

McElwee was substantially limited in the major life

activities of working, caring for himself, communicating,

thinking, and brain function.  *See* 42 U.S.C. § 12102(2)

(providing that "major life activities include, but are not

limited to" caring for oneself, learning, concentrating,

thinking, communicating, working, and the operation of

major bodily functions such as brain function); 29 C.F.R.

§ 1630.2(j)(1)(i) (instructing courts to construe the term

"substantially limits" broadly); *id.* § 1630.2(j)(3)(iii)

(specifically identifying autism as an impairment that

substantially limits brain function in virtually all

cases).  Nonetheless, we need not decide whether the

---

[5]    The ADAAA became effective on January 1, 2009 and
applies to claims, such as McElwee's, that arose after that
date.  *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122
Stat. 3553, 3559 (2008).

district court erred in finding McElwee was not disabled because even assuming *arguendo* that a reasonable jury could find McElwee disabled, the County is entitled to summary judgment for the reasons set forth below.

### b. *Whether McElwee is Qualified*

Although the parties disputed before the district court whether McElwee is a qualified individual, the court did not address this issue. *See McElwee*, 2011 U.S. Dist. LEXIS 114663, at *1, *12.

McElwee asserts that he is qualified to participate in Valley View's volunteer program because he adequately performed his volunteer duties for years. The County, on the other hand, argues that McElwee's "longstanding course of inappropriate conduct with numerous female employees, nursing students, and visitors to the facility" disqualified him from serving as a volunteer.

As noted, an individual is qualified to participate in a program if he meets the essential eligibility requirements for participation in the program, with or without reasonable accommodations. *See* 42 U.S.C. § 12131(2). To determine whether an individual is

qualified, courts look to a program's "formal legal eligibility requirements." *Henrietta D.*, 331 F.3d at 277 (citing 42 U.S.C. §§ 12131-12132). An eligibility requirement is not considered "essential" if a "reasonable accommodation would enable an individual to qualify for the benefit." *Castellano v. City of N.Y.*, 946 F. Supp. 249, 253 (S.D.N.Y. 1996), *aff'd on other grounds*, 142 F.3d 58 (2d Cir. 1998).

The "benefit" here at issue is the ability to participate in Valley View's volunteer program. To be qualified for such participation, a person must have been not only mentally and physically able to perform the tasks assigned to him, but also emotionally able to conduct himself in an appropriate manner when dealing with residents, supervisors, and other staff members. There is no dispute that McElwee was always qualified to perform the former functions. But by at least 2009, his sexual harassment of female staff members appears to have rendered him unqualified as to the latter. *See, e.g.*, *Higgins v. Md. Dep't of Agric.*, No. L-11-0081, 2012 U.S. Dist. LEXIS 25303, at *18 (D. Md. Feb. 28, 2012) (finding plaintiff's

inappropriate workplace behavior rendered him unqualified because "[t]he 'essential functions' of [plaintiff's] position included courteous and professional interactions with the public, fellow staff, subordinates, and supervisors").

The extent to which McElwee's aberrant behavior, which he attributed to his disability, disqualified him from participating in Valley View's volunteer program is perhaps more easily addressed by asking whether a reasonable accommodation for his disability existed.  *See Sista v. CDC Ixis N. Am. Inc.*, 445 F.3d 161, 171 (2d Cir. 2006) (concluding that plaintiff's misconduct is "distinct . . . from the issue of minimal qualification to perform a job" (quoting *Owens v. N.Y.C. Hous. Auth.*, 934 F.2d 405, 409 (2d Cir. 1991)) (internal quotation marks omitted)). We address that issue below.

2.    *Whether the County Discriminated Against McElwee*

McElwee alleges that his dismissal from Valley View's volunteer program was unlawful discrimination because he was not provided a reasonable accommodation for his disability.  In particular, he claims that Darwin

-23-

should have (1) worked with him and his therapist to help him behave more appropriately in the workplace; and (2) worked with the Valley View employees who complained about him to educate them about McElwee's disability so that they would be more tolerant of his behavior.

As an initial matter, McElwee's claim is as much a request to excuse his past misconduct as it is a request for future accommodation. He does not dispute that he followed and stared at female employees or that his conduct was reasonably perceived by others as inappropriate. It is also undisputed that when Darwin asked him about this behavior, he engaged in perseveration and made disturbing statements and gestures. This inappropriate behavior is indisputably a legitimate non-discriminatory reason for dismissing McElwee from the volunteer program, even if the behavior resulted from his disability. *See Canales-Jacobs v. N.Y.S. Office of Ct. Admin.*, 640 F. Supp. 2d 482, 500 (S.D.N.Y. 2009); U.S. Equal Emp't Opportunity Comm'n, *Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act*, question 36 (2002). "The ADA mandates reasonable

accommodation of people with disabilities in order to put them on an even playing field with the non-disabled; it does not authorize a preference for disabled people generally." *Felix v. N.Y.C. Transit Auth.*, 324 F.3d 102, 107 (2d Cir. 2003).

Further, even if, as McElwee argues, Darwin should have known he was disabled and proactively engaged in an interactive process to assess whether his disability could be reasonably accommodated, *see Brady*, 531 F.3d at 135-36, he has not met his burden of showing that the proposed accommodations are plausible, *see McBride*, 583 F.3d at 99-101; *Borkowski*, 63 F.3d at 138. On the contrary, as discussed below, both of the accommodations McElwee now claims he was denied are unreasonable on their face, as a matter of law.

The first accommodation McElwee proposes is that Valley View should have spoken to his therapist or "encourage[d] him to obtain particularized therapy to help him behave more appropriately in the workplace and . . . better interact with colleagues." Nothing in the record before us, however, indicates that further therapy would

have helped McElwee to refrain from his inappropriate conduct, either immediately or at any time in the near future.[6] On the contrary, a psychological evaluation conducted in August 2009 -- three months before McElwee was dismissed from Valley View -- indicated that he had a long-standing pattern of repeatedly approaching girls and women and obsessing about their rejection of him, and that this behavior was consistent with his PDD-NOS diagnosis. The evaluation also suggested that his perseverative behavior and inability to take constructive criticism were characteristics of his impairment.

Further, McElwee's psychiatrist of 14 years wrote a letter to McElwee's counsel in January 2011 -- a year after McElwee filed the Complaint in this case -- reporting that "[Mr. McElwee] does not respond to social cues (and body language) such as when people are having a private

---

[6] *See McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97-98 (2d Cir. 2009) (noting that a plaintiff requesting a reassignment as an accommodation must demonstrate that a vacant position existed "at or around the time when accommodation was sought"); *see also Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995) ("[R]easonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question.").

conversation, when the topic is inappropriate to the situation, when it is time to change the subject, when he is making someone uncomfortable." The psychiatrist did not suggest that further therapy would enable McElwee to behave appropriately. Accordingly, McElwee's proposed accommodation for Valley View to work with him to obtain additional therapy was unreasonable as a matter of law because he has failed to offer any assurance that it would have enabled him to meet the essential eligibility requirements of Valley View's volunteer program at any time in the near future.[7]

---

[7] *See, e.g.*, *Mole v. Buckhorn Rubber Prods., Inc.*, 165 F.3d 1212, 1218 (8th Cir. 1999) (finding requested accommodation unreasonable because plaintiff "could offer no assurance the requested accommodations would remedy her many job performance deficiencies," especially where a letter from her doctor warned that plaintiff "has a lifelong illness that 'will likely fluctuate considerably'"); *K.H. ex rel. K.C. v. Vincent Smith Sch.*, No. 06-CV-319 (ERK) (JO), 2006 U.S. Dist. LEXIS 22412, at *24 (E.D.N.Y. Mar. 29, 2006) (finding requested accommodation unreasonable because it likely would not "make it possible for [plaintiff] to continue to attend the School and benefit from its educational program"); *Higgins v. Md. Dep't of Agric.*, No. L-11-0081, 2012 U.S. Dist. LEXIS 25303, at *21 (D. Md. Feb. 28, 2012) (dismissing plaintiff's failure to accommodate claim because plaintiff "has not identified an accommodation that would have enabled him to conform his behavior to an acceptable standard").

McElwee's second requested accommodation -- for Valley View to work with the women who complained about his behavior "to educate [them] about plaintiff's disability or to [help them] better understand the nature of [their] concerns about plaintiff" -- is also unreasonable as a matter of law.  This proposed accommodation does not even purport to address McElwee's inappropriate behavior; instead, it simply demands that others be more tolerant.  Requiring others to tolerate misconduct, however, is not the kind of accommodation contemplated by the ADA.[8]  Further, nursing home employees, volunteers, and visitors

---

[8] *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 217 (2d Cir. 2001) (noting that Title I and the associated regulations define "reasonable accommodation" as including but not limited to job restructuring, modified work schedules, reassignment, and adjustments to work environment) (citing 42 U.S.C. § 12111(9)(B) and 29 C.F.R. § 1630.2(o)(1)(ii)); 42 U.S.C. § 12131(2) (accommodations available in Title II case include "modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services"); *see, e.g., K.H.*, 2006 U.S. Dist. LEXIS 22412, at *23 (finding request for plaintiff's psychiatrist to meet with school officials "to talk things over" and psychiatrist's statement that officials "needed to have more patience and more tolerance" with plaintiff, without recommending a particular plan to manage plaintiff's behavior, was not a reasonable accommodation); *Hall v. Wal-Mart Assocs.*, 373 F. Supp. 2d 1267, 1272 (M.D. Ala. 2005) (holding that plaintiff's "sought-after accommodation -- tolerance of his dishonesty -- . . . materially differs in kind from the more common accommodations previously recognized by this court").

should not be required to tolerate harassing behavior, and it would be an undue hardship for Valley View to have to countenance behavior of this kind.[9]

In sum, McElwee failed to present sufficient evidence below to raise a genuine issue of fact as to whether he was discriminated against because of his disability.

## CONCLUSION

For the reasons stated above, the judgment of the district court is affirmed.

---

[9] *See, e.g.*, *Darcangelo v. Verizon Md., Inc.*, No. WDQ-02-816, 2005 U.S. Dist. LEXIS 37660, at *11 (D. Md. June 7, 2005) ("Requiring [plaintiff's] coworkers and supervisors to suffer her tirades and harassment . . . constitutes an undue hardship which [her employer] cannot be expected to bear."), *aff'd*, 189 F. App'x 217, 218-19 (4th Cir. 2006) (per curiam).