*EEOC v. Sterling Jewelers, Inc.*

# In the
# United States Court of Appeals
# For the Second Circuit

———

AUGUST TERM, 2014

ARGUED: MAY 5, 2015
DECIDED: SEPTEMBER 9, 2015

No. 14-1782

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
*Plaintiff-Appellant,*

*v.*

STERLING JEWELERS INC.,
*Defendant-Appellee.*

———

Appeal from the United States District Court
for the Western District of New York.
No. 08 Civ. 706– Richard J. Arcara *Judge*.

———

Before: WALKER, LYNCH, and LOHIER, *Circuit Judges.*

———

This case arises from an Equal Employment Opportunity

Commission ("EEOC") enforcement action under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), alleging that

Defendant-Appellee Sterling Jewelers Inc. ("Sterling") engaged in a nationwide practice of sex-based pay and promotion discrimination. After discovery, the magistrate judge (Jeremiah J. McCarthy, *J.*) issued a Report and Recommendation finding that the EEOC failed to prove that it satisfied its statutory obligation to conduct a pre-suit investigation and recommended summary judgment on that basis. On March 10, 2014, the district court (Richard J. Arcara, *J.*) adopted the magistrate judge's Report and Recommendation, and granted summary judgment to Sterling.

On appeal, the EEOC argues that the district court erred in granting summary judgment because the magistrate judge improperly reviewed the sufficiency of the EEOC investigation rather than whether there was an investigation. We agree. Under Title VII, courts may review *whether* the EEOC conducted an investigation, but not the sufficiency of an investigation. The EEOC conducted an investigation in this case. Accordingly, we VACATE the district court's summary judgment order and REMAND the case for further proceedings.

_____

BARBARA L. SLOAN, (P. David Lopez, Carolyn L. Wheeler, Jennifer S. Goldstein, *on the brief*), Equal Employment

Commission, Office of General Counsel, Washington, D.C. *for Plaintiff-Appellant.*

GERALD L. MAATMAN, JR., (Jeffrey S. Klein, Weil, Gotshal & Manges, LLP, New York, N.Y., David Bennet Ross, William F. Dugan, Daniel B. Klein, Lorie E. Almon, Seyfarth Shaw LLP, New York, N.Y., *on the brief*), Seyfarth Shaw LLP, New York, N.Y., *for Defendant-Appellee.*

————

JOHN M. WALKER, JR., *Circuit Judge*:

This case arises from an Equal Employment Opportunity Commission ("EEOC") enforcement action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), alleging that Defendant-Appellee Sterling Jewelers Inc. ("Sterling") engaged in a nationwide practice of sex-based pay and promotion discrimination. After discovery, the magistrate judge (Jeremiah J. McCarthy, *J.*) issued a Report and Recommendation finding that the EEOC failed to prove that it satisfied its statutory obligation to conduct a pre-suit investigation and recommended summary judgment on that basis. On March 10, 2014, the district court (Richard J. Arcara, *J.*) adopted the magistrate judge's Report and Recommendation, and granted summary judgment to Sterling.

On appeal, the EEOC argues that the district court erred in granting summary judgment because the magistrate judge improperly reviewed the sufficiency of the EEOC investigation rather than whether there was an investigation. We agree. Under Title VII, courts may review *whether* the EEOC conducted an investigation, but not the sufficiency of an investigation. The EEOC conducted an investigation in this case. Accordingly, we VACATE the district court's summary judgment order and REMAND the case for further proceedings.

## BACKGROUND

Sterling is the largest fine jewelry company in the United States, operating chains including Kay Jewelers and Jared–the Galleria of Jewelry. Between 2005 and 2007, the EEOC received 19 individual charges of discrimination from women employed by Sterling in stores located in nine states: California, Colorado, Florida, Indiana, Massachusetts, Missouri, Nevada, New York, and Texas (the "Charging Parties"). Sixteen of the charges alleged that Sterling engaged in a "continuing policy or pattern and practice" of sex discrimination. *See, e.g.,* App'x 1390. Five investigators initially investigated the charges, but the EEOC later transferred all 19

charges to one investigator, David Ging. Around that time, the EEOC also requested copies of Sterling's company-wide protocols, including policies governing pay, promotion, and anti-discrimination; job descriptions for sales associates and management positions; and computerized personnel files listing employees' hiring dates, responsibilities, and pay and promotion histories.

In 2006, Sterling and the Charging Parties entered mediation and invited the EEOC to participate. Then-EEOC Regional Attorney Elizabeth Grossman, who participated on behalf of the EEOC, and the parties signed a Mediation and Confidentiality Agreement (the "Agreement"), as well as several addenda. Under the Agreement, the EEOC agreed to suspend its investigation during the mediation, and the parties agreed to identify the data relevant to the charges against Sterling and produce all of the documents on which their respective experts would rely in preparing their reports. App'x 3666-68. Based on the data provided by Sterling, labor economist Dr. Louis Lanier, hired by the Charging Parties, conducted a statistical analysis of Sterling's pay and promotion practices. This analysis

led Dr. Lanier to find that Sterling paid female employees less and promoted them at slower rates than similarly situated male employees.

Under a confidentiality provision in the Agreement, the EEOC agreed that it would "not rely on, or introduce as evidence in any court, arbitration, judicial, or other proceeding" information disclosed during the mediation. App'x 3656. However, the parties subsequently signed addenda, stating that the documents exchanged at the mediation could be given to Investigator Ging and permitting certain documents, including Dr. Lanier's analysis, to be placed in the EEOC investigative file if the mediation was unsuccessful.

In November 2007, the mediation failed. Thereupon, Ging sent letters to the parties stating: "I understand that Ms. Grossman has [Sterling's] permission to provide me with its documents exchanged in conjunction with that mediation . . . . [and] that Ms. Grossman has Charging Parties' and [Sterling's] permission to provide me with Dr. Lanier's tables and explanatory notes . . . . " App'x 959-62. Ging also encouraged the parties to provide any additional information they wanted the EEOC to consider during its investigation. The Charging Parties sent Ging a letter

summarizing the evidence of "company-wide" discrimination as well as supporting documents, including declarations from the Charging Parties; a declaration from a male employee attesting to his belief that Sterling discriminated against female employees with regard to pay and promotion; and Dr. Lanier's analysis. Sterling did not provide any additional information.

On January 30, 2008, the EEOC issued a Letter of Determination ("LOD") finding that Sterling "subjected Charging Parties and a class of female employees with retail sales responsibilities nationwide to a pattern or practice of sex discrimination in regard to promotion and compensation." App'x 1000. The LOD further stated:

> Statistical analysis of pay and promotion data provided by [Sterling] reveals that [Sterling] promoted male employees at a statistically significant, higher rate than similarly situated female employees and that [Sterling] compensated male employees at a statistically significant, higher rate than similarly situated female employees. Witness testimony further corroborates the allegations.

App'x 1000. Then, on September 23, 2008, the EEOC filed suit in the Western District of New York alleging that Sterling engaged in sex-based pay and promotion discrimination in violation of Title VII.

During discovery, approximately seven years after the close of the investigation, the parties deposed two EEOC investigators: Ging and Jennifer Carlo, the investigator assigned to the first of the 19 charges. Ging stated that he "d[id]n't really recall much about [the] investigation," App'x 32, and both investigators invoked the deliberative privilege and declined to answer several of the questions about the investigation.

Following discovery, Sterling moved for summary judgment on grounds that the EEOC had not satisfied its statutory obligation to conduct a pre-suit investigation. The magistrate judge issued a Report and Recommendation, in which he determined that there was "no evidence that [the EEOC] investigated a *nationwide* class" and recommended that the district court grant summary judgment. App'x 83. On March 10, 2014, the district court adopted the Report and Recommendation, granted summary judgment to Sterling, and dismissed the EEOC's action with prejudice. The EEOC timely appealed.

**DISCUSSION**

"We review an award of summary judgment *de novo*, construing the evidence in the light most favorable to the nonmoving party and drawing

all reasonable inferences in his favor." *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). Summary judgment is only appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. (citing Fed. R. Civ. P. 56(a)).

## I.    Judicial Review of Title VII Enforcement Actions

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* as amended, prohibits employers from discriminating on the basis of race, color, religion, sex, or national origin. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). Before the EEOC may bring an enforcement action under Title VII, it must discharge certain administrative obligations. The EEOC must: (1) receive a formal charge of discrimination against the employer; (2) provide notice of the charge to the employer; (3) investigate the charge; (4) make and give notice of its determination that there was reasonable cause to believe that a violation of Title VII occurred; and (5) make a good faith effort to conciliate the charges. *See* 42 U.S.C. § 2000e–5(b); *see also Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1649-50 (2015). Title VII does not define "investigation" or prescribe the steps that the EEOC must take in

conducting an investigation.  *Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir. 2002).

To ensure agency compliance with Title VII, Congress empowered federal courts to review whether the EEOC has fulfilled its pre-suit administrative obligations.  *See Mach Mining*, 135 S. Ct. at 1653 (holding that courts may review whether the EEOC has satisfied its obligation to conciliate).  The proper scope of that review, however, is an issue of first impression in this Circuit.

In the recently decided case of *Mach Mining*, the Supreme Court provided guidance regarding the scope of judicial review of the EEOC's administrative obligations.  *Id*.  In the context of the EEOC's obligation to conciliate, the Court explained that judicial review is "narrow" and serves to "enforce[] the statute's requirements . . . that the EEOC afford the employer a chance to discuss and rectify a specified discriminatory practice—but goes no further."  *Id*.  The Court further explained that a sworn affidavit from the EEOC stating that it satisfied its conciliation obligations but failed to reach an agreement "will usually suffice to show that it has met the conciliation requirement."  *Id.* at 1656.

*Mach Mining* did not address the EEOC's obligation to investigate, but we conclude that judicial review of an EEOC investigation is similarly limited: The sole question for judicial review is whether the EEOC conducted an investigation. As the district and magistrate judges in this case recognized, courts may not review the *sufficiency* of an investigation—only whether an investigation occurred. *EEOC v. Keco Indus., Inc.*, 748 F.2d 1097, 1100 (6th Cir. 1984); *see also EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 674 (8th Cir. 2012) ("[T]he nature and extent of an EEOC investigation into a discrimination claim is a matter within the discretion of that agency." (quoting *Keco*, 748 F.2d at 1100)); *Newsome*, 301 F.3d at 231 (same).

In order to prove that it has fulfilled its pre-suit investigative obligation, the EEOC must show that it took steps to determine whether there was reasonable cause to believe that the allegations in the charge are true. *Cf.* 42 U.S.C. § 2000e-5(b) (noting that the purpose of an EEOC investigation is to determine whether "there is reasonable cause to believe that the charge is true"); *EEOC v. Shell Oil Co.*, 466 U.S. 54, 71 (1984) ("[T]he purpose of [an EEOC investigation] is to determine whether there is reason

to believe those allegations are true."). Here, the EEOC's complaint against Sterling alleged nationwide discrimination; accordingly, the agency must show that it undertook to investigate whether there was a basis for alleging such widespread discrimination. The EEOC need not, however, describe in detail every step it took or the evidence it uncovered. As with the conciliation process, an affidavit from the EEOC, stating that it performed its investigative obligations and outlining the steps taken to investigate the charges, will usually suffice. *See Mach Mining*, 135 S. Ct. at 1656 (concluding that a sworn affidavit from the EEOC stating that it attempted to conciliate will usually establish that the EEOC has met its obligation to conciliate).

There are several reasons for this approach. First, this "limited review respects the expansive discretion that Title VII gives to the EEOC" in investigating discrimination claims, "while still ensuring that the Commission follows the law." *Id.* at 1653. Second, it reflects the fact that "Title VII ultimately cares about substantive results." *Id.* at 1654. Allowing courts to review the sufficiency of an EEOC investigation would "effectively make every Title VII suit a two-step action: First, the parties would litigate

the question of whether EEOC had a reasonable basis for its initial finding, and only then would the parties proceed to litigate the merits of the action." *Keco*, 748 F.2d at 1100 (internal quotation marks omitted). Extensive judicial review of this sort would expend scarce resources and would delay and divert EEOC enforcement actions from furthering the purpose behind Title VII—eliminating discrimination in the workplace. *See id; see also Ricci*, 557 U.S. at 577.

## II.    Application

The EEOC argues that the magistrate judge, while purporting to examine the existence of the EEOC's investigation, actually considered its sufficiency. We agree.

### A. The EEOC Investigated the Claims Against Sterling

Testimony from EEOC investigators Ging and Carlo and the investigative file show that the EEOC took multiple steps to investigate the claims against Sterling.[1] As the magistrate judge found, the EEOC received 19 charges, which were "investigated by five EEOC investigators." App'x

---

[1] The only statutory pre-suit obligation at issue in this case is the investigation. The parties agreed that the EEOC's participation in the mediation would satisfy its obligation to conciliate in the event that it brought an enforcement action, and there is no dispute concerning the other pre-suit requirements.

74. After receiving a letter from a Charging Party that identified six additional women alleging sex-based discrimination, the EEOC transferred all of the charges to one investigator. That investigator, Ging, testified that he reviewed all of the individual investigative files and investigated "all of the[ ] charges as class charges."App'x 569.

Additionally, the 2,600-page investigative file shows that the EEOC requested and obtained numerous documents related to the charges, including Sterling's company-wide policies governing pay, promotion, and anti-discrimination; witness statements; Sterling's responses to individual allegations; the Charging Parties' personnel documents; company-wide job descriptions; EEO-1 reports; and Dr. Lanier's statistical analysis, which found that Sterling paid and promoted women at statistically significant lower rates than men. Notes from the investigative file also show that the EEOC interviewed at least one Charging Party, Jacquelyn Boyle, in January 2006 and again in February 2006.

In contrast to the cases in which some of our sister circuits concluded that the EEOC did not satisfy Title VII's investigation requirement, it cannot be said here that the EEOC failed to conduct any pre-suit investigation at

all.  For example, in *EEOC v. Pierce Packing Co.*, the Ninth Circuit held that the EEOC did not conduct a pre-suit investigation where it "obtain[ed] the results of [a two-week Department of Labor] investigation," and "did not conduct an independent investigation." 669 F.2d 605, 606 (9th Cir. 1982). Similarly, in *CRST*, the Eighth Circuit held that the EEOC did not fulfill its investigative obligation because "the EEOC did not investigate the specific allegations of *any* of the 67 allegedly aggrieved persons . . . until *after* the Complaint was filed." *CRST*, 679 F.3d at 675-76.  In both *Pierce Packing* and *CRST*, the courts determined that the EEOC failed to take any steps to investigate.  That is plainly not the case here.  Although Ging acknowledged in discovery that he did not remember much about the investigation, that testimony—given some seven years after the investigation concluded—is not tantamount to an admission that he failed to conduct an investigation.[2]

Sterling identifies a laundry list of steps the EEOC failed to take in investigating the claims against it.  But "the nature and extent of an EEOC investigation into a discrimination claim is a matter within the discretion of

---

[2] The lengthy and costly depositions taken in this case might have been easily avoided by an affidavit from an EEOC investigator outlining the steps taken to investigate the claims.  It is especially important for the court and the parties to understand the contours of an EEOC investigation given that, as explained below, the EEOC investigation must be pertinent to the allegations that it ultimately includes in the complaint.

that agency." *Keco*, 748 F.2d at 1100; *see also CRST*, 679 F.3d at 674; *EEOC v. Caterpillar*, 409 F.3d 831, 832-33 (7th Cir. 2005); *Newsome*, 301 F.3d at 231. For a court to second guess the choices made by the EEOC in conducting an investigation "is not to enforce the law Congress wrote, but to impose extra procedural requirements. Such judicial review extends too far." *Mach Mining*, 135 S. Ct. at 1654-55.

### B. The EEOC Investigation Was Nationwide

Ging's testimony coupled with the documents in the investigative file suffice to demonstrate that the EEOC investigation was nationwide. The investigative file contains 19 charges, 16 of which alleged company-wide class and/or pattern-or-practice discrimination, from nine states across the country (California, Colorado, Florida, Indiana, Massachusetts, Missouri, Nevada, New York, and Texas), and Ging testified that he investigated all of those charges as "class charges." App'x 569. Additionally, the EEOC obtained Dr. Lanier's statistical analysis, based on company-wide computerized data, which found that Sterling paid and promoted male employees at statistically significant higher rates than similarly-situated

female employees nationwide.[3]  The EEOC also obtained Sterling's policies

governing pay and promotion, which, Sterling concedes, have nationwide

application.  This testimony together with these documents is sufficient to

establish that the investigation was nationwide.

In concluding that the investigation was not nationwide, the

magistrate judge found the word "class" to be ambiguous because it could

refer to a local, regional, or nationwide class. We are, however, at a loss to

think of a locality or region that would include California, New York, and

Texas, and the cases relied on by the magistrate judge are inapposite.  The

magistrate judge cited *EEOC v. Outback Steak House of Florida, Inc.*, for the

proposition that a "class can also mean a local or regional class instead of a

nationwide class"). But, as the district court in that case explained, "both the

charges and the investigation centered around [a] three-state region

[Colorado, Montana, and Wyoming], [so] Defendants had every reason to

---

[3] The magistrate judge concluded that the EEOC could not rely on Dr. Lanier's analysis in showing that the investigation was nationwide because Ging and Carlo invoked the deliberative privilege in response to questions regarding whether Dr. Lanier's analysis was the analysis referred to in the LOD and whether the EEOC independently verified the analysis. But nothing in Title VII suggests that the EEOC must identify the documents referenced in the LOD or, as explained above, independently validate expert analysis.  Therefore, the fact that Ging and Carlo declined to answer these questions about Dr. Lanier's analysis creates no bar to the EEOC's reliance on that analysis in establishing the scope of its investigation.

believe that the 'class' the EEOC was referring to in its determination was a *regional* class." 520 F.Supp.2d 1250, 1267 (D. Colo. 2007). Similarly, in *EEOC v. Jillian's of Indianapolis, IN, Inc.*, the EEOC's investigation was confined to a single state. *See* 279 F. Supp. 2d 974, 980 (S.D. Ind. 2003) ("The *nationwide* class named in the EEOC's Amended Complaint is not reasonably anticipated in its investigation into the four charges filed against Jillian's Indianapolis." (emphasis in original)). Because of the limited geographic scope of the investigations in *Outback Steak House* and *Jillian's*, there was reason to believe the employers did not have notice that the EEOC would bring suit on behalf of a nationwide class. By contrast, here the EEOC investigated charges alleging class-wide discrimination from women in nine states across the country. We therefore conclude that the class Ging referred to was nationwide.

Sterling contends that the EEOC cannot rely on Dr. Lanier's analysis to satisfy its burden of proof because the parties and the EEOC agreed that the materials would not "lose their mediation privilege." Def. Br. at 55. However, the Agreement stated that the EEOC could "not rely on, or introduce as evidence" documents exchanged during mediation "in any

court, arbitration, judicial, or other proceeding." App'x 3656.   We interpret that Agreement in light of the Fourth Addendum, in which Sterling agreed to have Dr. Lanier's analysis given to Ging and put in the investigative file in the event that the mediation failed.[4]  To be sure, there is some tension between various parts of the Agreement and its addenda. We read the whole of the documents, however, to mean that the EEOC was not precluded from relying on the analysis in reaching its own internal determination as to whether there was reasonable cause to believe Sterling violated Title VII.   Indeed, what other purpose could the parties have for allowing the EEOC to include Dr. Lanier's analysis in its investigative file if the EEOC could not review the analysis as part of its investigation?  Because the EEOC was permitted to rely on Dr. Lanier's analysis in making its reasonable-cause determination, the EEOC properly referenced that analysis as part of the proof that its investigation was nationwide.

---

[4] There is no dispute that Sterling consented to giving Dr. Lanier's analysis to Ging. Ging informed the parties at the close of mediation that he anticipated receiving the mediation documents and that he had the parties' permission to do so.  At no time did Sterling raise an objection.

**CONCLUSION**

For the reasons stated above, we VACATE the district court's order granting summary judgment and REMAND the case for further proceedings consistent with this opinion.