*O'Kane v. Plainedge Union Free School District*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of September, two thousand twenty.

PRESENT:

> JOHN M. WALKER, JR.,
> GUIDO CALABRESI,
> SUSAN L. CARNEY,
>> *Circuit Judges.*

───────────────────────────────────────

PATRICK O'KANE,

> *Plaintiff-Appellant,*

> v.                                                    No. 19-3446

PLAINEDGE UNION FREE SCHOOL DISTRICT,

> *Defendant-Appellee.*

───────────────────────────────────────

FOR APPELLANT:                    THOMAS RICOTTA, White, Ricotta & Marks, P.C., Long Island City, NY.

FOR APPELLEE:                     LEO DORFMAN (Steven C. Stern, *on the brief*), Sokoloff Stern LLP, Carle Place, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Block, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on September 23, 2019, is **AFFIRMED**.

Patrick O'Kane ("O'Kane") appeals from the grant of summary judgment in favor of Plainedge Union Free School District ("Plainedge") on O'Kane's claim, brought pursuant to 42 U.S.C. § 1983, that he was subjected to a hostile work environment on the basis of his Irish national origin, in violation of his rights under the Equal Protection Clause of the Fourteenth Amendment to the Constitution. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

We review the district court's grant of summary judgment de novo, viewing all the evidence in the record in the light most favorable to O'Kane. *McElwee v. County of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). To bring a claim under § 1983 against a municipal entity such as Plainedge, a plaintiff must allege that a violation of his rights occurred pursuant to a municipal "policy or custom." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A "policy or custom" can be established in several ways, including by showing the existence of a formal policy, *id.*, a practice sufficiently widespread to constitute a custom, *id.* at 690-91, or a policymaker's deliberate indifference to rights violations by his subordinates, *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004).

O'Kane presses a theory of *Monell* liability based on Plainedge policymakers' deliberate indifference to the violation of his rights. The district court rejected this argument. The district court first concluded that, for the purpose of establishing *Monell* liability, the only relevant policymakers were the members of the Plainedge Board of Education (the "School Board"). The district court then concluded that O'Kane had failed to establish that the School Board was on notice of the hostile work environment to which O'Kane was allegedly subjected, because the only School Board member O'Kane had notified regarding

2

the hostile work environment, Mary Ann Capone,[1] had left her position by August 2015, when O'Kane sent her an email notifying her of his complaint.

On appeal, O'Kane first contends that the district court overlooked evidence that he had contacted Capone while she was still a School Board member regarding the allegedly hostile work environment. According to O'Kane, his August 2015 email to Capone—which he does not dispute he sent after she had left the School Board—was in fact to follow up on a complaint he made to Capone in 2014. The only evidence O'Kane points to in support of this assertion, however, is an affidavit that he submitted with his opposition to defendant's motion for summary judgment, in which he states that he emailed Capone in August 2015 "to follow up about [his] prior complaint" regarding an allegedly discriminatory caricature left in his work vehicle. App'x 528. In the affidavit, O'Kane also states, "I had previously complained about the caricature, so this was an email following up on that." *Id.*

Nothing in this affidavit supports O'Kane's assertion on appeal that he made a complaint to Capone in 2014. O'Kane never states in his affidavit to *whom* he had previously complained about the caricature, yet this is the critical fact underlying his assertion on appeal. And nowhere else in his opposition to the motion for summary judgment does O'Kane assert that he previously complained to Capone regarding the drawing. In the Local Rule 56.1 Statement of Undisputed Facts that Plainedge submitted with its motion for summary judgment, Plainedge described O'Kane's contact with Capone as follows: "On August 11, 2015—about one year after he discovered the drawing—Plaintiff sent an email to Mary Ann[] Capone about the drawing." App'x 519. In his Local Rule 56.1 Counterstatement of Facts, O'Kane did not dispute Plainedge's statement and did not mention a previous complaint to Capone. Rather, he merely added that in 2015 he had "emailed Capone because he had not been informed about any investigation into the drawing." App'x 560. O'Kane has thus consistently maintained that he contacted Capone in 2015 to follow up on a previous complaint, but he points to no evidence in the record to

---

[1] Although the district court referred to this member of the School Board as "Annmarie" Capone, Sp. App'x 7, we adopt the spelling used in Plainedge's briefing.

3

support his assertion on appeal that he made that previous complaint to Capone in 2014. Because O'Kane points to no other record evidence supporting his assertion that he complained to Capone while she was a School Board member, we conclude that the district court did not overlook relevant evidence about Board members' knowledge when it granted summary judgment to Plainedge.

O'Kane also argues that the district court erred in concluding that only School Board members could be policymakers for the purpose of Plainedge's *Monell* liability, and as a result wrongly disregarded evidence that O'Kane reported the allegedly hostile work environment to Plainedge Superintendent Edward A. Salina, Jr., and that Salina was deliberately indifferent to it.

"To establish deliberate indifference a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012). Deliberate indifference is not demonstrated on every occasion that a plaintiff has reported potential rights violations to a policymaker: rather, constitutionally cognizable deliberate indifference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). As this Court explained in *Amnesty America*, a plaintiff's "evidence must establish . . . that a policymaking official had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was obvious, and the policymaker's failure to investigate or rectify the situation evidences deliberate indifference, rather than mere negligence or bureaucratic inaction." 361 F.3d at 128 (citation omitted) (internal quotation marks omitted).

On appeal, O'Kane points to his deposition testimony regarding a meeting he had with Salina in which he showed Salina the allegedly discriminatory caricature left in his work vehicle. O'Kane indeed testified that he took the discriminatory caricature to Salina. App'x 312. O'Kane's testimony, however, does not support his contention that Salina acted with deliberate indifference to O'Kane's complaints. O'Kane testified rather that Salina said the use of the caricature to harass O'Kane was "not acceptable" and that he would "get to the

4

bottom" of it. App'x 318. According to O'Kane, Salina said that he would have O'Kane's supervisor, Assistant to the Superintendent for Administration and Special Projects Chris Dillon, look into the issue. App'x 313. The record reflects that O'Kane then *declined* Salina's offer to raise the matter with Dillon and chose to take the caricature to Dillon himself. As O'Kane recalled the interaction, he also declined an offer from Salina to discuss the incident further and left Salina's office stating, "*I* need to get to the bottom of who did this." App'x 314 (emphasis added). The record further reflects that Salina nonetheless contacted Dillon about the caricature. When O'Kane went to speak with Dillon about the incident, Dillon had already spoken with Salina about it.

Even if nothing came of the proffered investigation—an investigation O'Kane seemingly declined—no reasonable jury could conclude based on these facts that the incomplete investigation reflected deliberate indifference or indeed anything more than "bureaucratic inaction." *Amnesty America*, 361 F.3d at 128. O'Kane's testimony shows that Salina took O'Kane's harassment claim seriously and sought to address the issue even when O'Kane said he would handle it himself.

Because we conclude O'Kane cannot establish Plainedge's *Monell* liability based on his complaint to Superintendent Salina, we do not reach the question whether the district court erred in concluding that only School Board members were policymakers for the purpose of establishing *Monell* liability.

\* \* \*

For the foregoing reasons, the District Court's judgment is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

5