Jalbert v. Gryaznova

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of May, two thousand twenty-two.

PRESENT:
>> RICHARD C. WESLEY,
>> MICHAEL H. PARK,
>> EUNICE C. LEE,
>>> *Circuit Judges.*

---

**In re: Bicom NY, LLC,**

>> *Debtor*,

---

**CRAIG R. JALBERT, in his capacity as the Liquidation Trustee of the Liquidation Trust,**

>> *Plaintiff-Appellant*,

>> v.                                                    21-1821

**IRINA GRYAZNOVA,**

>> *Defendant-Appellee.*

---

| | |
|---|---|
| **FOR PLAINTIFF-APPELLANT:** | William Dunnegan, New York, NY. |
| **FOR DEFENDANT-APPELLEE:** | Jeffrey C. Dannenberg, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Rakoff, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Over a decade ago, Irina Gryaznova opened a joint bank account with Veniamin Nilva that was intended to hold only her money and to facilitate her permanent residency in the United States. But Nilva ran into financial troubles and needed to move funds between his businesses while keeping his lending banks in the dark. Without Gryaznova's knowledge, Nilva routed $1 million from BICOM, NY LLC through the joint account, where it stayed for two days before Nilva transferred it to his other business via a forged check in Gryaznova's name to hide the source. Later, BICOM filed for bankruptcy, and Craig R. Jalbert, the trustee, sought to recover the $1 million in transferred funds from Gryaznova under 11 U.S.C. § 550(a)(1), which permits a trustee to recover fraudulent transfers from an "initial transferee" for the benefit of the estate. The bankruptcy court entered summary judgment in favor of Gryaznova, and the district court affirmed, holding that she was not an "initial transferee" and thus the trustee could not recover the fraudulently transferred $1 million from her. The trustee appealed. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

This Court reviews the interpretation of a statute and a district court's entry of summary judgment *de novo*. *See United States v. Williams*, 733 F.3d 448, 452 (2d Cir. 2013); *McElwee v. Cty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). Under the Bankruptcy Code, to the extent that a fraudulent transfer is avoided, "the trustee may recover, for the benefit of the estate, the property transferred . . . from . . . the initial transferee of such transfer." 11 U.S.C. § 550(a). "If the recipient of debtor funds was the initial transferee, the bankruptcy code imposes strict liability and

2

the bankruptcy trustee may recover the funds." *In re Red Dot Scenic, Inc.*, 351 F.3d 57, 58 (2d Cir. 2003). Although the Bankruptcy Code does not define "initial transferee," we described who may qualify as an "initial transferee" in *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52 (2d Cir. 1997). There, we explained that "the term 'initial transferee' references something more particular than the initial recipient." *Id*. at 57. We thus declined to "equate[] mere receipt with liability" and held that "mere conduits" of fraudulent transfers are not "initial transferees." *Id*.

The trustee argues that Gryaznova was an "initial transferee" because although she did not exercise actual control over the funds, she could have "walk[ed] into [the bank] after the funds cleared . . . and . . . walk[ed] out with $1,000,000 (in cash or a certified check) from the Joint Account." Appellant's Br. 10. In his view, "[a]n 'initial transferee' only needs the ability to physically control the funds and need not actually control the funds." *Id*. at 9. We disagree. As a joint accountholder, Gryaznova was an initial recipient of the $1 million, but that is insufficient to confer "initial transferee" status under *Finley*. *See* 130 F.3d at 57. Although she hypothetically could have exercised control over the funds because they were in the joint account for two days, it is undisputed that she never had "a realistic opportunity to" use the funds because she did not know about them. Indeed, she had no reason to suspect that Nilva would use the joint account in this manner based on their agreement that the joint account was to hold only her money, not his. App'x 142. The district court correctly concluded that Gryaznova was a "mere conduit" of the fraudulent transfer and cannot be liable to the bankruptcy estate for funds she never knew about. *Finley*, 130 F.3d at 58.

We have considered the remainder of Jalbert's arguments and find them to be without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court