**Joseph V. TREGLIA, Plaintiff–Appellant,**

v.

**TOWN OF MANLIUS, Defendant–Appellee.**

**Docket No. 01–9350.**

United States Court of Appeals, Second Circuit.

Argued: Oct. 31, 2002.

Decided: Dec. 16, 2002.

John L. Valentino, Green & Seifter Attorneys, PLLC, Syracuse, NY (Melinda J. Hartnett, on the brief), for Plaintiff–Appellant.

Alan R. Peterman, Hiscock & Barclay, LLP, Syracuse, NY, for Defendant–Appellee.

Before: FEINBERG, CARDAMONE and SACK, Circuit Judges.

FEINBERG, Circuit Judge.

Plaintiff-appellant Joseph Treglia appeals from two orders of the United States District Court for the Northern District of New York (Munson, J.). The first, entered in October 1999, dismissed Treglia's federal and state employment discrimination claims brought against defendant-appellee Town of Manlius pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the New York State Human Rights Law ("NYHRL"), N.Y. Exec. Law § 296, et seq. The first order also dismissed Treglia's New York State common law claim against defendant-appellee for intentional infliction of emotional distress.[1] The second order, entered in October 2001, granted summary judgment to defendant-appellee on Treglia's claims of retaliation under the ADA, the Rehabilitation Act, and the NYHRL. For the reasons stated below, we vacate the district court's judgment in part and remand the case for further proceedings.

## I. Background

In December 1990, plaintiff Joseph Treglia began working as a road patrol

---

1. Treglia does not appeal from the dismissal of either his federal discrimination claim or his common law claim for intentional infliction of emotional distress.

officer for the Town of Manlius Police Department (hereafter the "Town" or the "department"). Before that, Treglia was employed as a sergeant by the neighboring Village of Chittenango Police Department. In April 1996, while off-duty and at home, Treglia experienced a new onset seizure disorder, commonly referred to as an epileptic seizure. Two Town police officers responded to the 911 call from Treglia's wife, and one of them was with Treglia in the ambulance when he had a second seizure. Treglia returned to work several days later under only one restriction—not to drive or operate heavy machinery until cleared to do so by his doctor.

Treglia alleges that the department's attitude toward him changed dramatically after his seizures. Although he had previously been viewed as a hard-working, valuable officer on track for promotion, he was now considered a liability and was watched and scrutinized at every turn. Treglia asserts that he was not allowed to perform investigative interviews by himself, as was the usual practice, but was now accompanied by another officer in that work. Although he had received medical clearance to return to work, Treglia was ordered to go home until he could provide further medical information demonstrating his specific ability to perform his duties. Further, Treglia alleges he received more administrative and less investigative work, was given fewer assignments to work overtime, and was not allowed to participate in training classes without explicit medical authorization. In November 1996, Treglia allegedly complained to one of his superiors, then-Sergeant Barry, that it was illegal for the department to treat him differently because of his seizures.

In February 1997, Chief of Police Richard E. Carbery promoted two other Town officers to sergeant over Treglia, even though Treglia had the highest score on the civil service examination for that position.[2] At the time, Treglia was under the impression that he was next in line when a position for sergeant became available. When Treglia confronted Chief Carbery about the failure to promote him, the Chief allegedly responded that Treglia had always done a good job but that he would not receive a promotion to sergeant "now or ever" and that now was a "good time for him to get out of the business."

Shortly thereafter, Treglia contacted the Police Benefit Association ("PBA") about filing a charge against the department for discriminating against him because of his disability. In April 1997, Treglia filed charges of discrimination with the New York State Division of Human Rights ("NYDHR") and the Equal Employment Opportunity Commission ("EEOC"). Treglia alleges that these filings only made matters worse as the Town retaliated by escalating its negative treatment of him in various ways. For example, Treglia asserts that although he had never before been the subject of a formal internal investigation, he soon became the subject of three. He was also involuntarily transferred to an administrative, non-enforcement position and received a negative performance evaluation, which was inconsistent with his earlier favorable work evaluations.

According to Treglia, these retaliatory actions continued as he pursued his discrimination claims. For example, in March 1998, shortly after he informed several members of the department that they might be contacted as part of a NYDHR

---

**2.** Earlier that year, Sergeant Barry and one other officer were promoted to Lieutenant, opening up these two positions.

investigation, Treglia claims that he was the only officer required to work three different shifts in one month. Although he was trained as a hostage negotiator, he was not called on to assist in a hostage situation until the year 2000. Similarly, Treglia was also assigned to cover the front-desk responsibilities on what he alleges was a full-time basis. In December 1998, Treglia was assigned as a road patrol officer to the night shift, although there were less senior officers available to cover the shift. After providing a note from his doctor requesting that he work only days, Treglia was involuntarily placed on disability leave and not allowed to return to the day shift for another six weeks. Finally, in March 1999, he was again passed over for a promotion to sergeant, in favor of an officer who had scored lower on the civil service exam.

Later that month, Treglia filed his second charge with the NYDHR and EEOC, this time alleging retaliation for the filing of his first charge. Treglia filed his complaint in this action in June 1999.[3] As already indicated, the complaint principally alleged violations of the ADA, the Rehabilitation Act, and the NYHRL.

In a Memorandum–Decision and Order filed in October 1999 (the 1999 Opinion), the district court granted the Town's motion to dismiss the federal and state discrimination claims, holding that Treglia failed to allege that he had a disability or that the Town perceived him as having a disability as that term is defined by the ADA and corresponding state law. The court also granted the Town's motion to dismiss the state claim for intentional infliction of emotional distress, but denied the motion with regard to plaintiff's state and federal retaliation claims. After further proceedings and discovery, the Town moved for summary judgment on the remaining retaliation claims. In an Order filed in October 2001 (the 2001 Opinion), the court granted the motion, holding that Treglia had not produced any admissible evidence that the Town's stated legitimate reasons for its allegedly retaliatory actions were pretextual. The court also appears to have held that Treglia did not suffer any adverse employment action because "he is still a member of the Manlius Police Department." This appeal followed.

## II. Discussion

In this court, Treglia argues that the district court erred in granting summary judgment to the Town on his federal and state retaliation claims. His principal arguments are that (1) the court applied the wrong standard in determining whether he was the subject of any adverse employment actions, and (2) the record contains ample evidence for a reasonable jury to conclude that the Town's stated reasons for the actions were a pretext for retaliation. Treglia also argues that the district court erred in its earlier decision to dismiss his state claim of discrimination.[4] We turn first to the district court's treatment of the retaliation claims.

### A. The federal and state retaliation claims

We review de novo the district court's grant of summary judgment on Treglia's retaliation claims, construing the evidence in the light most favorable to the nonmoving party. See *Tenenbaum v. Williams,* 193 F.3d 581, 593 (2d Cir.1999),

---

3. There is no dispute that Treglia has obtained the necessary administrative agency releases to bring this action in the district court.

4. Treglia has not appealed from the district court's dismissal of his federal discrimination claim. That claim is therefore not before us.

cert. denied sub nom. *City of New York v. Tenenbaum,* 529 U.S. 1098, 120 S.Ct. 1832, 146 L.Ed.2d 776 (2000). In doing so, we must resolve all ambiguities and draw all factual inferences in favor of the non-movant. *Brown v. Henderson,* 257 F.3d 246, 251 (2d Cir.2001). Summary judgment is not appropriate where a review of the record reveals sufficient evidence for a rational trier of fact to find in the plaintiff's favor. See *Maresco v. Evans Chemetics,* 964 F.2d 106, 110 (2d Cir.1992).

█ The ADA makes it unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). The Rehabilitation Act and NYHRL contain similar provisions against retaliation and are governed in this respect by the same standards as the ADA. See 29 U.S.C. § 794(d); N.Y. Exec. Law § 296(7); *Weixel v. Board of Educ. of the City of New York,* 287 F.3d 138, 148–49 (2d Cir.2002) (elements of a retaliation claim under Rehabilitation Act are same as the ADA); *Weissman v. Dawn Joy Fashions, Inc.,* 214 F.3d 224, 234 (2d Cir.2000) (applying ADA analysis to plaintiff's retaliation claim under both ADA and NYHRL).

█ At the outset, we note that Treglia's decision not to appeal his federal discrimination claim does not affect his ability to pursue his federal retaliation claim. See *Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 218 (2d Cir.2001) (affirming the district court's dismissal of plaintiff's discrimination claim but vacating dismissal of retaliation claim); *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 770 (2d Cir.1998) (same). A plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful "so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law." *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.,* 183 F.3d 155, 159 (2d Cir.1999) (internal quotation marks omitted). The Town has not argued that Treglia's belief that it had discriminated against him was either held in bad faith or unreasonable. In any event, it is clear from the record that Treglia has produced sufficient evidence to create at least a genuine issue of material fact in that regard.

█ Claims for retaliation are analyzed under the same burden-shifting framework established for Title VII cases. See *Weixel,* 287 F.3d at 148 (stating the elements of a retaliation claim under Rehabilitation Act and ADA); *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 223 (2d Cir.2001) ("We analyze a retaliation claim under the ADA using the same framework employed in Title VII cases."). In order to establish a prima facie case of retaliation, Treglia must show that: (1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity. See *Cifra,* 252 F.3d at 216. A plaintiff's burden at this prima facie stage is *de minimis.* See *Richardson v. New York State Dept. of Correctional Serv.,* 180 F.3d 426, 444 (2d Cir.1999).

█ Treglia filed his retaliation charges with the appropriate agencies in March 1999. However, his claims of retaliation are sufficiently related to his April 1997 discrimination charge that we may review all evidence of the events claimed in that earlier charge. See *Owens v. New York City Housing Authority,* 934 F.2d 405,

410–11 (2d Cir.1991) ("[W]hen an employee brings a claim alleging retaliation for filing a complaint with the EEOC, the retaliation claim is deemed 'reasonably related' to the original EEOC filing.").

■ It is clear that Treglia established the first two elements of a prima facie case. Treglia's attempts to assert his rights against discrimination are protected activities, including his alleged complaints to then-Sergeant Barry in November 1996, his ultimate filing of federal and state administrative charges in April 1997, and his efforts with the NYDHR to investigate his claims in February 1998. See *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir.2000) (stating that "the law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection"); *Sumner v. United States Postal Serv.,* 899 F.2d 203, 209 (2d Cir. 1990) (protected activities include "making complaints to management"). The Town does not claim that Treglia failed to establish the first element of his prima facie case. Nor does the Town dispute that it knew of his activities, the second element of a prima facie case.

■ As to the third element, the district court correctly stated the standard for adverse employment action as a "materially adverse change in the terms, privileges, duration and conditions of employment." However, the court erred in finding that Treglia failed to establish any adverse employment action because he was "still a member of the Manlius Police Department." Treglia's claim of discriminatory failure to promote falls within the core activities encompassed by the term "adverse actions." See *Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir.1999) (defining

adverse action to include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand"). Moreover, we have made clear that adverse employment actions are not limited to "pecuniary emoluments." *Preda v. Nissho Iwai Am. Corp.,* 128 F.3d 789, 791 (2d Cir.1997) (internal quotation marks omitted). Lesser actions such as negative employment evaluation letters may also be considered adverse. *Morris,* 196 F.3d at 110. Therefore, if sufficiently linked to retaliatory animus, many of the actions taken by the Town could be considered unlawful under this broad definition of adverse action.

■ In order to establish the last element of a prima facie case of retaliation, Treglia must show that the allegedly adverse actions occurred in circumstances from which a reasonable jury could infer retaliatory intent. We have held that a close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation. See, e.g., *Cifra,* 252 F.3d at 217 ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." (internal quotation marks omitted)). In this case, many of the alleged adverse employment actions took place within a few months of Treglia's alleged complaints to then-Sergeant Barry that the department was discriminating against him.[5] See *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir.1998) (two months between protected activity and allegedly adverse action sufficient to establish causation). The Town argues that the

**5.** Although Treglia's complaints to management occurred prior to his filing of a formal administrative charge, such complaints are themselves protected activity and can therefore provide an independent basis from which the trier of fact may infer retaliation.

first allegedly retaliatory action after Treglia filed his administrative charges in April 1997 did not occur until almost a full year later in March 1998. That argument, however, ignores Treglia's protected activity between those two dates. For example, Treglia asserts that in February 1998 the NYDHR requested that he submit a list of witnesses who could corroborate his charges of discrimination, after which he told several members of the department that they might be contacted as part of the NYDHR investigation. The temporal proximity between this protected activity in February 1998 and the allegedly adverse employment actions in March 1998 is sufficient to establish the required causal link for a prima facie case. See *Richardson*, 180 F.3d at 435, 446–47 (holding one month between service of deposition notices in plaintiff's Title VII lawsuit and the employer's abusive acts sufficient to establish a causal link between the lawsuit and the adverse actions).

 Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision. If a defendant meets this burden, "the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Cifra*, 252 F.3d at 216.

There is no dispute that the Town has articulated legitimate, non-retaliatory reasons for each of the alleged adverse employment actions taken against Treglia. For example, the Town claims that the promotions about which Treglia complained were given to officers who were more qualified for management than Treglia. Although Treglia scored well on civil service exams, the Town alleges that he had difficulty working with other officers.

It further claims that several of the internal investigations against Treglia were initiated by outside parties and that Treglia's actions had warranted the discipline he received. As for Treglia's other examples of adverse action, the Town argues that they were routine employment decisions necessary to meet the department's needs and made in conformance with departmental policies.

 The issue is whether Treglia produced sufficient evidence of pretext. In granting summary judgment to the Town, the district court credited the Town's reasons, holding that "[p]laintiff has proffered no admissible evidence that defendant's stated explanations are pretextual. The continuing retaliatory actions alleged by plaintiff appear to be nothing more than decisions concerning work assignments, administrative matters and Departmental procedures." However, viewing the evidence in the light most favorable to the plaintiff, we conclude that a reasonable jury could find that the non-retaliatory reasons given by the Town were pretextual explanations meant to hide its unlawful motive.

Treglia points to a number of statements attributable to the Town that tend to show pretext and retaliatory motive. According to Treglia, when he was first passed over for promotion in February 1997, he approached Chief Carbery to find out what he could do to improve his chances for a promotion in the future. The Chief allegedly responded that Treglia had always done a good job but that he would not receive a promotion to sergeant "now or ever." While the Chief denies making the statement, this factual dispute is an issue of credibility for the jury. Similarly, Treglia claims that when the Chief heard about Treglia's discrimination charges the Chief told PBA President Mark Buzzard that "if [Treglia] wants to play hard ball, we can

swing the bat back and play hard ball too." The Town does not deny that the Chief made such a statement in reference to Treglia. However, it argues that the statement was made in the context of settling a grievance Treglia had filed concerning discipline he received. Even if we assume that the statement was made in the context the Town claims, it could still be evidence of retaliatory intent given Treglia's claim that the manner in which the discipline was brought and settled was itself retaliatory.

The record also contains evidence that could refute the Town's reasons for failing to promote Treglia. The Town claims that Treglia was passed over for promotion to sergeant because he had difficulty working with other police officers. It argues that Chief Carbery was well aware of Treglia's problems from his experience as Chief of Police in the Village of Chittenango, where plaintiff was previously employed. In its 2001 Opinion, the district court credited the Town's version of events, stating, "The Chief was aware of plaintiff's exceptional technical skills, but also knew that he frequently had difficulty following police procedures and orders, not encouraging characteristics for someone becoming a member of a management team." However, Treglia points out that Chief Carbery had promoted him to the position of sergeant in the Village of Chittenango. The Chief also provided glowing letters of recommendation for Treglia to attend law school, to enter a highly selective law enforcement program of the National Academy of the Federal Bureau of Investigation, and as part of Treglia's application for the position of Chief of Police in Chittenango. The Town's response is that the Chittenango promotion to sergeant was not deserved on the merits but was merely an attempt to assist plaintiff in obtaining the cooperation of his co-workers and that the letters

of recommendation were nothing more than "puffery." Treglia also points to his employment evaluations by the department from March and September 1996, only five months before Treglia was passed over for promotion in February 1997, indicating that he was "an important team player" and that he "works well with others."

In sum, it seems clear to us that a jury could reasonably believe that the Town's non-retaliatory reasons for the above actions were pretext meant to hide its true retaliatory motive. We hold that on his retaliation claims Treglia has raised genuine issues as to material facts, see Fed. R.Civ.P. 56(c), that only a jury—not the district court—could properly decide. We reiterate that in reviewing the district court's grant of summary judgment we have construed the evidence in the light most favorable to Treglia. Our decision therefore does not suggest any view as to how the jury ought to ultimately resolve these issues.

### B. The state discrimination claim

In its 1999 Opinion, the district court dismissed Treglia's *federal* discrimination claim on the merits because he did not allege that his disability substantially limited a major life activity and did not show that the Town perceived him to be incapable of working in a broad range of jobs as required under the ADA. As noted above, Treglia does not appeal from that dismissal. However, he argues that the district court erred in the portion of the 1999 Opinion dismissing his *state* discrimination claim. As to this claim, the district court held,

> Because New York courts apply the same analysis for perceived disability and retaliation claims as are applied in federal employment cases, plaintiff's state claims here were discussed previ-

ously in tandem with his federal claims. Suffice it to say that the court will retain jurisdiction over plaintiff's retaliation claim, and decline to do so over his perceived disability claim.

Treglia argues that this was a dismissal on the merits of his state discrimination claim and was improper because the NYHRL defines disability differently than does the ADA. The Town argues that the district court did not dismiss the *state* discrimination claim on the merits, but simply declined to exercise its pendent jurisdiction over that claim in light of its dismissal of the *federal* discrimination claim.

█ It is unclear from the district court's opinion whether the court simply declined supplemental jurisdiction over the state discrimination claim or whether it dismissed that state claim on the merits. However, dismissal of the state claim on the record before us was erroneous in either case. Supplemental jurisdiction in this case is proper because Treglia's state discrimination claim arises out of approximately the same set of events as his federal retaliation claim. Moreover, we have held that "the discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of [28 U.S.C. § 1367(c)]." *Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir.1998).[6] None of the § 1367(c) categories are available in the instant case. Treglia's state discrimination claim does not raise a novel or complex issue of state law, does not predominate over the federal retaliation claim over which the district court retained

jurisdiction, and does not raise other compelling reasons for declining jurisdiction. The district court therefore should retain jurisdiction over the state discrimination claim.

█ As to the merits of the state discrimination claim, New York and Second Circuit cases make clear that the New York disability statute defines disability more broadly than does the ADA. The New York Court of Appeals has held that "in New York, the term 'disability' is more broadly defined [than in typical disability statutes].... Fairly read, the statute covers a range of conditions varying in degree from those involving the loss of a bodily function to those which are merely diagnosable medical anomalies which impair bodily integrity and thus may lead to more serious conditions in the future." *New York Division of Human Rights v. Xerox Corp.*, 65 N.Y.2d 213, 218–19, 491 N.Y.S.2d 106, 480 N.E.2d 695 (1985). More recently, we applied this broad reading of the New York statute, pointing out that "unlike the federal statute, the state statute does not require [plaintiffs] to identify a major life activity that is substantially limited by [their] impairment." *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 154 (2d Cir.1998). Therefore, the district court could not have properly dismissed the state discrimination claim based solely on the definition of disability it applied to the federal discrimination claim. Accordingly, we remand the state discrimination claim for further consider-

---

**6.** Section 1367(c) provides that district courts may decline to exercise supplemental jurisdiction over related claims if:
(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
28 U.S.C. § 1367(c).

ation.[7] In doing so, we express no view on the merits of that claim under the broader New York statute.

### III. Conclusion

For the foregoing reasons, we vacate the district court's dismissal of Treglia's state discrimination claim and its grant of summary judgment to the Town on his federal and state retaliation claims. We remand these claims for further proceedings consistent with this opinion.

---

7. Our remand of the state discrimination claim does not require reconsideration of the federal discrimination claim or the state common law claim of intentional infliction of emotional distress as the district court clearly dismissed those claims on the merits and Treglia has not appealed from those decisions.