*Hatch & Henderson v. Brennan*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of November, two thousand nineteen.

Present:
>     PIERRE N. LEVAL
>     DEBRA ANN LIVINGSTON,
>     JOSEPH F. BIANCO,
>         *Circuit Judges.*

_____

MARY HATCH, KEITH HENDERSON,

> *Plaintiffs-Appellants*,

> v.                                                                 18-2387

POSTMASTER GENERAL MEGAN J. BRENNAN,

> *Defendant-Appellee*.

_____

| | |
|---|---|
| For Plaintiffs-Appellants: | W. MARTYN PHILPOT, JR., Law Office of W. Martyn Philpot, Jr., New Haven, CT |
| For Defendant-Appellee: | CAROLYN A. IKARI (Sandra S. Glover, *on the brief*), Assistant United States Attorneys, *for* John H. Durham, United States Attorney for the District of Connecticut, New Haven, CT |

Appeal from a judgment of the United States District Court for the District of Connecticut (Arterton, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants Mary Hatch ("Hatch") and Keith Henderson ("Henderson") (together, "Plaintiffs-Appellants") appeal from a July 13, 2018 ruling of the U.S. District Court for the District of Connecticut (Arterton, *J.*) granting summary judgment in favor of Defendant-Appellee as to their employment discrimination and retaliation claims under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* We review grants of summary judgment *de novo*, "construing the facts in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor." *Burns v. Martuscello*, 890 F.3d 77, 83 (2d Cir. 2018). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Plaintiffs-Appellants brought suit against their longtime employer, the U.S. Postal Service (the "Postal Service"), alleging that Postal Service management, including Catherine Litke ("Litke"), Theresa Bruso ("Bruso"), and Andrew Cullen ("Cullen"), discriminated against them due to their disability and age and retaliated against them for their complaints about the resulting hostile work environment. Plaintiffs-Appellants worked as human resources specialists in the Postal Service's Connecticut Valley District. Hatch, who was 66 years old in early 2015, had thirty years of work experience with the Postal Service, while Henderson, then age 59, had thirty-five years of experience. Beginning in 2014, their department was managed by Litke.

Plaintiffs-Appellants testified that Litke created a difficult, combative working environment and was frequently rude, insulting, and berating. They also stated that Litke imposed unreasonable deadlines for the projects she assigned to Plaintiffs-Appellants and constantly threatened them with discipline. Plaintiffs-Appellants expressed their concerns on several occasions. Hatch noted that she was experiencing stress and a hostile work environment on a Request for Absence Form (the "Form 3971") and described chaos, bullying, and harassment in a response she wrote to Litke after receiving a Letter of Warning regarding a missed deadline. Plaintiffs-Appellants also co-authored a letter of complaint (the "Joint Complaint"), which notified management about a wide range of grievances regarding working conditions under Litke. Cullen undertook an informal investigation of the Joint Complaint, but ultimately concluded that Litke had not harassed Plaintiffs-Appellants and did not inform Plaintiffs-Appellants of the outcome of the investigation.

After Litke became their manager, Hatch experienced symptoms such as severe headaches, anxiety, and depression, while Henderson was diagnosed with general anxiety disorder. Hatch went out on sick leave on January 21, 2015, and Henderson went on sick leave the following day. Neither ultimately returned to work. Hatch officially retired, on advice of her doctor, effective April 30, 2015, although she had planned on working until June 2018. Henderson remained on sick leave and, upon exhausting his leave, retired on May 31, 2016.

1. Disability Discrimination under the Rehabilitation Act

In evaluating an employment discrimination claim under the Rehabilitation Act, this Court applies the standards set forth in the Americans with Disabilities Act of 1990 ("ADA"). 29 U.S.C. §§ 791(f), 794(d). The elements of a *prima facie* case are: "(1) the employer is subject to the [Rehabilitation Act]; (2) the plaintiff is disabled within the meaning of the

3

[Rehabilitation Act] or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (per curiam). To establish a hostile work environment on the basis of disability, a plaintiff must show "(1) that the harassment was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (internal quotation marks and citation omitted). "It is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a protected characteristic"—namely, in the Rehabilitation Act context, perceived or actual disability.[1] *Tolbert v. Smith*, 790 F.3d 427 (2d Cir. 2015).

Plaintiffs-Appellants argue that the district court erred in granting summary judgment by failing to construe the record in the light most favorable to them. We disagree. While Plaintiffs-Appellants' burden at the *prima facie* stage is "minimal," *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128 (2d Cir. 2012), even assuming that Plaintiffs-Appellants satisfied the first four elements of the *prima facie* case, there is insufficient evidence in the record to permit a reasonable factfinder to find that they have carried their burden as to the final factor—that any adverse employment action occurred because of disability.

---

[1] Plaintiffs-Appellants primarily set forth arguments based on a perceived disability theory. Any arguments based on actual disability were waived due to Plaintiffs-Appellants' representations at oral argument before the district court that they intended to proceed solely on the basis of perceived disability. *See United States v. Spruill*, 808 F.3d 585, 587 (2d Cir. 2015).

4

Plaintiffs-Appellants point to Litke's communication to Hatch regarding insufficiencies in FMLA paperwork and Cullen's adjournment of a meeting with Henderson regarding a reasonable accommodation as circumstantial evidence suggesting that the Postal Service was motivated by anti-disability animus. Yet neither of these events supports that inference. Litke's letter informed Hatch that paperwork for her FMLA leave was deficient, causing her to be designated AWOL. Plaintiffs-Appellants put forth no evidence to support their conjecture that the steps taken by Litke to address the fact that an employee was absent without properly documented leave—an ordinary job responsibility for a supervisor—pertained to any perceived disability, let alone that it was discriminatory.

Likewise, no inference of discriminatory motivation can be drawn from Cullen's adjournment of Henderson's reasonable accommodation meeting. Under Plaintiffs-Appellants' own version of events, Henderson stated that he could not make a determination as to whether any accommodation could permit him to return to work until he found out the results of his Joint Complaint. Cullen responded that he had not been aware that Henderson had been part of the Joint Complaint, that he would have to conduct an investigation, and there was no sense in continuing the meeting at that time. Nothing about this decision to adjourn the meeting based on Henderson's representations supports the inference that Cullen was motivated by anti-disability animus.

Plaintiffs-Appellants also cite the Postal Service's failure to properly investigate and follow up on the Joint Complaint as relevant circumstantial evidence; however, that alleged deficiency does not suggest any causal connection between their disability and the Postal Service's actions. The Joint Complaint contained no reference to disability, and

5

Plaintiffs-Appellants establish no link between any perceived disability and the lack of response or remedial action by Bruso or Cullen to the Joint Complaint.

Thus, because the evidence in the record is insufficient to demonstrate any connection between the Postal Service's actions and its perception of the Plaintiffs-Appellants as disabled, a rational jury could not conclude that Plaintiffs-Appellants satisfied the elements of a *prima facie* case of disability discrimination or demonstrated a hostile work environment based on disability.

2. Retaliation Under the Rehabilitation Act

Retaliation under the Rehabilitation Act is governed under ADA standards and "analyzed under the same burden-shifting framework established for Title VII cases." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).[2] In order to establish a *prima facie* case of retaliation, a plaintiff must show that he "(i) . . . was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002). "Protected activity" refers to a plaintiff's action "taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000).

Plaintiffs-Appellants argue that the district court erroneously granted summary judgment as to their retaliation claims by adopting an overly formalistic approach in determining that the communications made by Plaintiffs-Appellants were insufficient to place the Postal Service on notice of protected activity. This argument has no merit. Indeed, as the district court

---

[2] The retaliation claims were originally pleaded as arising under Title VII; however, at oral argument before the district court, Plaintiffs-Appellants clarified that these claims arose under the Rehabilitation Act. To the extent Plaintiffs-Appellants also intended to plead retaliation under the ADEA, any such claims were waived on appeal and, in any case, summary judgment in favor of the Postal Service would be appropriate as to those claims for the reasons set forth below.

acknowledged, protected activity may consist of informal actions such as "making complaints to management." *Littlejohn v. City of New York*, 795 F.3d 297, 317 (2d Cir. 2015) (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)). Yet "implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by [the Rehabilitation Act]." *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.,* 136 F.3d 276, 292 (2d Cir. 1998). None of Plaintiffs-Appellants' communications could conceivably have alerted the Postal Service to the fact that their grievances pertained to treatment based on a protected class.

The three communications on which Plaintiffs-Appellants rely—Hatch's Form 3971, the Joint Complaint, and Hatch's response to Litke's Letter of Warning—fail to mention a protected class or in any way imply that Plaintiffs-Appellants were protesting discrimination based on such a protected class. Hatch's Form 3971 referred to "STRESS/HARASSMENT/HOSTILE WORK ENVIRONMENT FOR THE PAST YEAR." J.A. 897. But mentioning a "hostile work environment" without more, under the circumstances of this case, could not put the Postal Service on notice that Plaintiffs-Appellants were protesting a hostile work environment based on a protected class such as disability. *See Alfano v. Costello,* 294 F.3d 365, 375 (2d Cir. 2002) ("Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination.") As to the Joint Complaint, Plaintiffs-Appellants themselves admitted in their testimony that this document contained no language regarding age or disability-based discrimination. While the Joint Complaint vividly sets forth Plaintiffs-Appellants' grievances regarding an environment of bullying and harassment, given the lack of any linkage to their

7

membership in a protected class, the Joint Complaint could not have put the Postal Service on notice of any protected activity. Absent any implied or express connection to protected status, the fact that this document was labeled a "Hostile Work Environment Compliant" [sic] when it was transmitted to Plaintiffs-Appellants' managers could not provide the requisite notice. J.A. 903. To the contrary, the Joint Complaint's statement that "it would be fair to say that Keith and I are not the only victims of [Litke's] wrath but that everyone in the department, and well beyond, have suffered from her irrational and hostile behavior as well," J.A. 252, expressly contradicts the notion that Plaintiffs-Appellants were being singled out, let alone on a protected basis. Likewise, Hatch's response to Litke's Letter of Warning refers to a chaotic environment of bullying and harassment without implying that this atmosphere could be related to protected status. Because none of Plaintiffs-Appellants' communications could have alerted the Postal Service that their grievances related to their membership in a protected class, they cannot establish a *prima facie* case of retaliation.

3. Age Discrimination under ADEA

A plaintiff establishes a *prima facie* case of discrimination under ADEA by showing that "(i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination, such as the fact that the plaintiff was replaced by someone 'substantially younger.'" *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001) (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)). "Under the ADEA, individuals ages forty and over are members of the protected class." *Id.* (citing 29 U.S.C. § 631(a)). The

8

elements of an age-based hostile work environment claim are the same as those for a disability-based hostile work environment claim, described above.

The district court correctly granted summary judgment to the Postal Service because the record is insufficient to permit a rational factfinder to conclude that Plaintiffs-Appellants established a *prima facie* case of age discrimination. There is no evidence giving rise to an inference that any Postal Service employees were motivated by age-based discrimination or subjected Plaintiffs-Appellants to a hostile work environment on the basis of age. As an initial matter, none of the Plaintiffs-Appellants' evidence based on the treatment of comparator employees is sufficient to withstand summary judgment. Plaintiffs-Appellants claim that the other employees in the department, all of whom were younger than Plaintiffs-Appellants, received various forms of preferential treatment. As to the claim that other employees were not detained by Litke after their departure time to answer questions, this assertion is wholly speculative, as Henderson conceded that neither he nor Hatch were present at the end of other employees' shifts. Similarly, Plaintiffs-Appellants' theory that younger employees were permitted to more liberally take annual leave is based on speculation, given the absence of any evidence regarding the leave records of other employees or Litke's response to any leave requests by other employees. This conjecture does not create a triable issue of fact.

As to Plaintiffs-Appellants' assertion that Litke treated younger employees more favorably by giving them a lighter workload, Plaintiffs-Appellants have not established that the more junior employees were sufficiently similarly situated to them such that any differences in workload expectations could support an inference of age discrimination. Henderson acknowledged that "we had the bulk of the knowledge at the time," J.A. 650, and that they were designated as "management employees or supervisory employees," J.A. 599. As the district

9

court observed, there is nothing unlawful about an employer imposing higher expectations on more senior employees than on those who are less senior.

The other circumstantial evidence on which Plaintiffs-Appellants rely is likewise insufficient. As to the fact that Cullen mentioned Henderson's potential retirement to Litke, Cullen's awareness of Henderson's retirement eligibility does not support an inference of age discrimination, particularly in light of the Supreme Court's recognition that "an employee's age is analytically distinct from his years of service." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993). Even if construed as evidencing an awareness of Henderson's age, this testimony does not support an inference of discriminatory intent on that basis, given that Cullen made the statement in the course of attempting to *dissuade* Litke from issuing additional discipline to Henderson. As to the Postal Service's failure to follow up on the Joint Complaint, Plaintiffs-Appellants have shown nothing in the record that draws a link between Plaintiffs-Appellants' age and any deficiencies in the Postal Service's response to their grievance. Indeed, Henderson admitted that any such link was purely speculative, stating "I can't sit here right now and say definitely that was age discrimination, but why else wouldn't they respond? . . . I don't want to speculate, because I don't know." J.A. 601. Similarly, Hatch's allegation that Bruso decided not to publish a photograph of Plaintiffs-Appellants in a newsletter and thereby "implied we looked old" is based entirely on speculation. J.A. 582. Finally, Plaintiffs-Appellants' theory that Litke wanted to rid her department of older workers and replace them with younger workers with lower salaries was without any support in the record. Henderson acknowledged as much, testifying that "it *seemed* like they just wanted to get rid of the two older people in the department and *maybe* get somebody a little younger." J.A. 599 (emphasis added). He stated that this impression "was just based on the way [Litke]

10

treated us. If she . . . valued our service and wanted us to stay, she wouldn't have treated us the way she did and we were the two oldest." J.A. 602. Plaintiffs-Appellants' conjecture provides no basis for drawing a rational inference of age-based animus and is insufficient to withstand summary judgment.

We have considered Plaintiffs-Appellants' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

11