20-3624-cv (L)
*Norman v. NYU Langone Health Sys.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of December, two thousand twenty-one.

PRESENT:
> GERARD E. LYNCH,
> JOSEPH F. BIANCO,
> STEVEN J. MENASHI,
> > *Circuit Judges.*

---

Jasmine Norman,

> *Plaintiff-Appellant-Cross-Appellee*,

> v.

NYU Langone Health System,

> *Defendant-Appellee-Cross-Appellant*.

20-3624-cv (L),
20-3745-cv (XAP)

---

FOR PLAINTIFF-APPELLANT-CROSS-APPELLEE: STEPHEN BERGSTEIN, Bergstein & Ullrich, New Paltz, NY.

FOR DEFENDANT-APPELLEE-CROSS-APPELLANT: KATHRYN J. BARRY (Todd H. Girshon, New York, NY, *on the brief*), Jackson Lewis P.C., Melville, NY.

Appeal from an order of the United States District Court for the Southern District of New York (Torres, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED**.

Plaintiff-Appellant-Cross-Appellee Jasmine Norman appeals from the United States District Court for the Southern District of New York's September 30, 2020 order granting summary judgment to Defendant-Appellee-Cross-Appellant NYU Langone Health System ("NYU Langone") on, *inter alia*, Norman's failure-to-accommodate and retaliation claims brought under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("the ADA").[1] Norman alleges that NYU Langone violated her rights by failing to reasonably accommodate her disability—namely, her alleged allergy to flu vaccines—and then retaliated against her by suspending and threatening to terminate her due to her request for a reasonable accommodation. In its cross-appeal, NYU Langone contends that the district court abused its discretion in declining to exercise supplemental jurisdiction over similar claims brought under the New York State Human Rights Law, N.Y. Exec. L. § 296, *et seq.* (the "NYSHRL"), and the New York City Human Rights Law,

---

[1] The district court also dismissed Noman's parallel state and local claims without prejudice, but did not set out its judgment in a separate document as required by Federal Rule of Civil Procedure 58(a). Nevertheless, we exercise jurisdiction to hear the appeal, as the district court's order was a final decision "within the meaning of 28 U.S.C. § 1291." *Hamilton v. Westchester County*, 3 F.4th 86, 90 n.2 (2d Cir. 2021); *see also In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 263 n.1 (2d Cir. 1993) ("[W]e can treat the dismissal order as a final decision for purposes of 28 U.S.C. § 1291, since lack of compliance with the separate document rule is a waivable defect, and no party has complained."). In addition, in her reply brief, Norman stated that she was not challenging the district court's dismissal of the ADA discrimination claim. Thus, Norman's appeal is limited to the grant of summary judgment on her failure-to-accommodate and retaliation claims.

2

N.Y.C. Admin. Code § 8-101, *et seq*. (the "NYCHRL"). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, which we reference only as necessary to explain our decision to affirm.

## BACKGROUND

The facts summarized below are derived from the parties' submissions on summary judgment in the district court and, unless otherwise noted, are undisputed.

Norman began working at NYU Langone in 2011, and she has been subsequently promoted several times; her role has never been patient-facing. Norman first requested and was granted an exemption from taking a flu vaccine in 2012. She previously experienced two negative reactions after receiving a flu vaccine: the first time, as a child, in an undocumented incident of which she recalled little detail, and then again as an adult in 2001. In the second instance, Norman's symptoms developed shortly after receiving the vaccine and included shortness of breath and heart palpitations. Norman was operating a motor vehicle at the time she experienced the symptoms, but she did not require medical attention. Instead, her symptoms subsided after fifteen to twenty minutes, and she was able to continue driving.

Norman's oral requests for exemption from the flu vaccine were granted from 2012 until 2016, when NYU Langone updated its flu vaccination policy to eliminate exemptions based on personal (as opposed to medical or religious) reasons, and to establish an Influenza Vaccination Declination Review Board (the "Review Board"), which reviewed employees' written exemption requests anonymously on a case-by-case basis. Beginning in 2016, employees seeking medical exemptions were also required to submit a standardized request form to be completed by their physician. Norman's physician, Dr. Vinod Aggarwal, completed the form by checking the box

3

indicating that Norman had suffered a "severe allergic reaction after a previous influenza vaccine." Joint App'x at 607. Norman's 2016 exemption was granted and, instead of taking the vaccine, she wore a surgical mask until the end of the 2016–2017 flu season.

The next year, for the 2017–2018 flu season, NYU Langone again revised its policy such that employees who were denied an exemption must be vaccinated, and those who were denied an exemption but nevertheless declined the vaccine would face discipline, including discharge. The 2017 exemption request form asked, among other things, whether the employee suffered from an allergy to eggs, or had experienced a previous reaction to the vaccine. Dr. Aggarwal again completed the exemption request form on Norman's behalf. He noted that she had suffered a negative reaction to the flu vaccine in 2001, that her symptoms included heart palpitations and shortness of breath, and that her reaction persisted for three days (which was not accurate per to Norman's own report that the adverse reaction lasted only fifteen to twenty minutes). The form also indicated that Norman was allergic to eggs and had no other known allergies. The Review Board reviewed her exemption request and referred her to Dr. Amina Abdeldaim, an allergist at NYU Langone, to determine whether it would be appropriate to administer the FluBlok flu vaccine, recently developed as an alternative to traditional flu vaccines. The FluBlok vaccine, unlike traditional flu vaccines, is not manufactured using an egg-based manufacturing process. As part of her examination, and depending on the employee's medical history and physical examination, Dr. Abdeldaim would conduct a FluBlok skin test. A negative skin test would indicate that that the employee was not allergic to the FluBlok vaccine, and Dr. Abdeldaim would then administer it. In contrast, a positive skin test would suggest that the patient was allergic to some component within the FluBlok, and that patient would be granted a flu vaccine exemption.

4

After some email correspondence about whether the referral to Dr. Abdeldaim was necessary, which included Norman's indication that she would wear a mask (as she had during the prior flu season), the Review Board explained to Norman that "[b]ased on the documentation you've provided, you've indicated that you had an allergic reaction to eggs," and the "next step" was to refer her to an allergist. Joint App'x at 52. Norman was further informed that she would be referred to Human Resources if she did not make an appointment with Dr. Abdeldaim. Eventually, Norman made and then attended an appointment with Dr. Abdeldaim during which she explained her previous reactions to the flu vaccine. She was then offered the FluBlok skin test. Norman declined the skin test, which resulted in the denial of her exemption request. Two days later, on a Friday, Norman learned that she faced termination for failing to comply with the flu vaccine policy. Her supervisor intervened on her behalf and Norman offered to take the traditional flu vaccine immediately to avoid being terminated. Instead, NYU Langone suspended Norman with pay over the weekend pending a second appointment with Dr. Abdeldaim for administration of the FluBlok skin test. The following Monday, Norman met again with Dr. Abdeldaim and was given the FluBlok skin test. She experienced no negative reaction. Accordingly, she was then administered the FluBlok vaccine.

Shortly after receiving the FluBlok vaccine, Norman experienced shortness of breath and heart palpitations, similar to her two prior reactions to the flu vaccine. Dr. Abdeldaim treated her with Albuterol and an EpiPen injection, and sent Norman to the Emergency Department. Dr. Abdeldaim's patient notes described how Norman had experienced an adverse reaction to the flu vaccine, and "should not receive any formulation of the flu vaccination indefinitely." Joint App'x at 505. Norman's Emergency Department records stated, "[p]resentation inconsistent with allergic

5

reaction though confounded by empiric epipen administration prior to arrival." Joint App'x 466. Norman was discharged from the hospital a few hours later and, after taking approximately a week of leave, she returned to work. The following month, she was promoted.

Norman subsequently filed suit asserting employment discrimination claims under federal, New York, and New York City law. The district court, *inter alia*, granted summary judgment to NYU Langone as to Norman's failure-to-accommodate and retaliation claims brought under the ADA, which she appeals, and declined to exercise supplemental jurisdiction over her NYSHRL and NYCHRL claims, which NYU Langone appeals.

## DISCUSSION

### I. Standard of Review

We review a grant of summary judgment *de novo*, "construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in h[er] favor." *McElwee v. County of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). Summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We review a district court's decision to decline to exercise supplemental jurisdiction over state and municipal claims for an abuse of discretion. *Spiegel v. Schulmann*, 604 F.3d 72, 78 (2d Cir. 2010).

Furthermore, "[i]t is well settled that we may affirm on any grounds for which there is a record sufficient to permit conclusions of law." *Olsen v. Pratt & Whitney Aircraft, Div. of United Techs. Corp.*, 136 F.3d 273, 275 (2d Cir. 1998) (internal quotation marks omitted). Thus, we are

6

not limited in our review to the reasoning expressed by the district court. *See Laurent v. PricewaterhouseCoopers LLP*, 794 F.3d 272, 273 n.1 (2d Cir. 2015).

## II.    Failure to Accommodate Claim

To establish a *prima facie* case of discrimination under the ADA based on an employer's failure to accommodate a disability, a plaintiff must demonstrate that "(1) the plaintiff is a person with a disability under the meaning of the statute in question; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019) (internal quotation marks and alterations omitted). A "reasonable accommodation" is one that "enable[s] an individual with a disability . . . to perform the essential functions of [her] position" or "enjoy equal benefits and privileges of employment as are enjoyed by [ ] other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1).

Here, we do not reach the question of whether the district court properly concluded that Norman was not disabled within the meaning of the ADA at the time she sought an accommodation. Even assuming *arguendo* that Norman did have a disability that substantially limited a major life activity, as is required under the ADA, 42 U.S.C. § 12102, and drawing all reasonable inferences in her favor, *McElwee*, 700 F.3d at 640, Norman's failure-to-accommodate claim cannot survive summary judgment because the undisputed facts demonstrate that NYU Langone provided a reasonable accommodation.

When an employer has taken measures to accommodate an employee's disability, "the employer is entitled to summary judgment if, on the undisputed record, the existing

7

accommodation is plainly reasonable." *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (internal quotation marks omitted). Here, the uncontroverted evidence demonstrated that: (1) Norman had previously experienced heart palpitations and shortness of breath after twice receiving a traditional flu vaccine many years earlier (once as a child and once as an adult); (2) although she experienced a negative reaction during the adult incident, her symptoms subsided after fifteen to twenty minutes without medical attention, and she was able to resume driving after a short pause; (3) the traditional flu vaccine is made using an egg-based manufacturing process, and Norman's 2017 exemption request form from her doctor indicated that she was allergic to eggs; (4) NYU Langone, in an effort to accommodate her purported allergy to flu vaccines, referred her to an allergist, Dr. Abdeldaim, for examination; (5) the FluBlok vaccine was manufactured without the common allergens in the traditional flu vaccine, including eggs; (6) Dr. Abdeldaim conducted a skin test to determine if it was safe for Norman to receive the FluBlok vaccine; and (7) only after Norman tested negative to the FluBlok skin test was she administered the FluBlok vaccine.

Given these uncontroverted facts, we conclude the accommodation provided by NYU Langone—namely, an individualized examination by Dr. Abdeldaim and the administration of the FluBlok skin test to determine whether the FluBlok vaccine (which is not manufactured in a process that involves eggs) was an appropriate alternative to the traditional flu vaccine given Norman's known allergy to eggs—was "plainly reasonable." *Noll*, 787 F.3d at 94; *accord Wernick v. Fed. Reserve Bank*, 91 F.3d 379, 385 (2d Cir. 1996). Only after the results of the FluBlok skin test showed that she tested negative for allergies to that vaccine was Norman required to receive the FluBlok vaccine to maintain her employment. The fact that Norman may have later suffered

8

an adverse reaction to the FluBlok vaccine, notwithstanding that her FluBlok skin test was negative, does not undermine the reasonableness of the accommodation offered by NYU Langone at the time the decision was made. *See Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 725 (2d Cir. 1994) ("[A]n employer is only responsible for employment decisions based on information available to it when it decides."). In other words, given the undisputed information that NYU Langone had available at the time it required Norman to receive the FluBlok vaccine, no rational jury could find that the accommodation was unreasonable.

We find similarly unpersuasive Norman's argument that her willingness to wear a mask creates a disputed issue of fact as to the reasonableness of the accommodation. We have emphasized that, although the employer must provide a reasonable accommodation, it is "not required to provide a perfect accommodation or the very accommodation most strongly preferred by the employee." *Noll*, 787 F.3d at 95. Therefore, the fact that Norman's preferred accommodation was to wear a mask (and avoid the FluBlok vaccine) does not preclude summary judgment because the accommodation offered was plainly reasonable in light of the undisputed facts. Accordingly, summary judgment in NYU Langone's favor was warranted on the failure-to-accommodate claim under the ADA.

## III. Retaliation Claim

Norman also asserts that the district court erred in granting summary judgment to NYU Langone on her claim that NYU Langone retaliated against her by suspending her and threatening to terminate her due to her request for a reasonable accommodation. We disagree.

Under the ADA, a plaintiff must show that she "(i) . . . was engaged in protected activity; (ii) the alleged retaliator knew that [she] was involved in protected activity; (iii) an adverse

9

decision or course of action was taken against [her]; and (iv) a causal connection exists between the protected activity and the adverse action." *Natofsky*, 921 F.3d at 353 (internal quotation marks omitted). A causal connection may be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Id.* (internal quotation marks omitted).

"Claims for retaliation [under the ADA] are analyzed under the same burden-shifting framework established for Title VII cases." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). Therefore, "[o]nce a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision." *Id*. at 721. "If a defendant meets this burden, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Id*. (internal quotation marks omitted).

We agree with the district court that, even when the facts are construed most favorably to Norman, no rational jury could find the causation element necessary for the ADA retaliation claim.[2] It is uncontroverted that NYU Langone had a policy of terminating employees who lacked

---

[2] We have noted that "there is an unsettled question of law in this Circuit as to whether a plaintiff must show, in order to succeed on her ADA retaliation claim, that the retaliation was a 'but for' cause of the adverse employment action or merely a 'motivating factor.'" *Flieger v. E. Suffolk BOCES*, 693 F. App'x 14, 18 (2d Cir. 2017). However, we need not decide this issue here because Norman's ADA retaliation claim cannot survive summary judgment under either test.

10

an exemption and refused to receive the flu vaccine, and that the 2017 revised influenza vaccine policy was broadly applicable to "all faculty, staff, students, volunteers and clinical contractors." Joint App'x at 609. Here, Norman's brief suspension and threat of termination were implemented pursuant to that policy. In fact, Norman was even granted an additional opportunity to comply with the policy by meeting with Dr. Abdeldaim for a second time after her supervisor intervened on her behalf to prevent her immediate termination. Moreover, her two-day suspension with pay took place over the weekend leading up to her appointment with Dr. Abdeldaim on Monday. Norman has thus failed to point to any evidence that she received differential treatment in this regard as compared to any other non-exempt employee who also refused the flu vaccine, but did not request a reasonable accommodation. The lack of any retaliatory animus due to her accommodation request is further demonstrated by the fact that, within a few weeks of taking the FluBlok vaccine, Norman was promoted. In short, on this record, no rational jury could find that any actions taken by NYU Langone were caused by any retaliatory animus based upon Norman's accommodation request, rather than by its desire to enforce its written flu vaccine policy.[3]

Accordingly, the district court properly granted summary judgment to NYU Langone on the retaliation claim under the ADA.

## IV. Supplemental Jurisdiction

NYU Langone's cross-appeal challenges the district court's decision to decline to exercise

---

[3] Given our conclusion regarding the lack of proof of causation, we need not and do not address the other elements of Norman's retaliation claim, including whether there exists a genuine issue of material fact as to whether Norman suffered an adverse action by either threat of termination or her two-day suspension with pay.

11

supplemental jurisdiction over Norman's NYSHRL and NYCHRL claims and, thus, to dismiss them without prejudice.

A district court "may decline to exercise supplemental jurisdiction over a claim" once it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Under the pendent jurisdiction doctrine, the factors to be considered when a district court exercises its discretion include "judicial economy, convenience, fairness, and comity." *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1191 (2d Cir. 1996)). We have emphasized that, "[w]hen all bases for federal jurisdiction have been eliminated from a case so that only pendent state claims remain, the federal court should ordinarily dismiss the state claims." *Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988); *see also Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").

To be sure, we have upheld the exercise of supplemental jurisdiction over state and municipal disability claims when the plaintiff would have to prove the same elements. *Kinneary v. City of New York*, 601 F.3d 151, 158 (2d Cir. 2010). However, we have also cautioned against unnecessarily delving into non-federal legal issues in the absence of any continuing basis for federal question jurisdiction. *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) ("[I]n the absence of any remaining federal claims, the appropriate analytic framework to be applied to discrimination claims based on a 'disability' as defined by New York state and municipal law is a question best left to the courts of the State of New York.").

12

Although NYU Langone concedes that "declining to exercise supplemental jurisdiction in 'usual' ADA cases is in line with § 1367(c)" and "this Court's precedent," and acknowledges that "the NYSHRL and NYCHRL define disability differently than their federal counterpart," it nevertheless argues that the district court abused its discretion here because Norman was unable to meet certain *prima facie* elements that do not differ among these statutory provisions, such as the existence of a reasonable accommodation. Appellee's Br. at 57–58. We disagree. It was certainly not an abuse of discretion here for the district court to conclude, given the numerous issues being litigated (including whether Norman had a disability under NYSHRL and NYCHRL), that "the law of New York in regard to relative state and federal disability claims analysis is still developing," and that "the balance of factors counsels in favor of declining supplemental jurisdiction." Special App'x at 20 (internal quotation marks omitted). Accordingly, we conclude that NYU Langone's cross-appeal is without merit.

*   *   *

We have considered all of the parties' remaining arguments and find no basis for reversal. Accordingly, we **AFFIRM** the order of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court